STATE OF NORTH CAROLINA v. TERRY EUGENE WOODS

No. COA98-1564

(Filed 18 January 2000)

**1. Drugs— tax on seized narcotics—effect of Fourth Circuit decision—prior panel decision binding**

Even though the Fourth Circuit held that the North Carolina Drug Tax 'constitutes criminal punishment and defendant claims his double jeopardy rights will be violated if there is further prosecution against him in this case based on the Department of Revenue's prior collection of unpaid taxes on seized drugs under N.C.G.S. §§ 105-113.105 through 105-113.113, the trial court did not err in denying defendant's motion to dismiss the charges of possession of marijuana, maintenance of a building for the purpose of keeping marijuana, possession of marijuana with intent to sell or deliver, and possession of drug paraphernalia, because: (1) with the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State; and (2) another North Carolina Court of Appeals panel previously upheld assessment and collection of the

STATE v. WOODS

[136 N.C. App. 386 (2000)]

Drug Tax against a challenge under the double jeopardy clause, and this panel is bound by the prior decision of another panel addressing the same issue when there has been no modification by our Supreme Court.

2. **Search and Seizure— warrantless search—permissible scope of search exceeded**

Even though the officers' warrantless entries into defendant's residence did not violate the Fourth Amendment since the security alarm was sounding at the time officers arrived, the back door of the residence was ajar, and a cursory inspection revealed a recently broken window, the trial court erred in denying defendant's motion to suppress evidence of marijuana and $44,890 cash based on the ensuing search and seizure violating the permissible scope of searches: (1) the marijuana seized from the chest of drawers was not properly seized under the plain view doctrine; (2) the search of the chair and kitchen cabinet was unreasonable considering the burglar alarm was sounding the entire time and the officers would have had to believe the intruder had taken time to stuff a small child into the cabinet and place a chair in front of the cabinet before exiting; and (3) the money in the bottom of the chair was only discovered because the officer moved it to search the cabinet.

3. **Search and Seizure— warrant—tainted evidence**

Even though the officers' prior warrantless entries into defendant's residence did not violate the Fourth Amendment since the security alarm was sounding at the time officers arrived, the back door of the residence was ajar, and a cursory inspection revealed a recently broken window, the officers' ensuing search violated the permissible scope, and the trial court erred in denying defendant's motion to suppress the additional evidence the officers obtained pursuant to a warrant because the illegally discovered marijuana and cash obtained during the warrantless search comprised more than a minor portion of the evidence establishing probable cause for the warrant, and thus, the fruits obtained pursuant to the search under the warrant are inadmissible.

Appeal by defendant from judgment entered 5 March 1998 by Judge Henry W. Hight, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 6 October 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Joy Anita Jones, for the State.*

*Harrison, North, Cooke & Landreth, by A. Wayne Harrison, for defendant-appellant.*

LEWIS, Judge.

Defendant was tried at the 2 March 1998 session of Alamance County Superior Court on charges of possession of marijuana, maintenance of a building for the purpose of keeping marijuana, possession of marijuana with intent to sell or deliver and possession of drug paraphernalia. The jury found defendant guilty on all charges. Defendant was sentenced as an habitual felon, receiving three active terms of eighty to one hundred five months imprisonment and a term of one hundred twenty days, to be served consecutively. Defendant appeals, making four arguments.

The State's evidence tended to show the following. On 7 August 1997 at 10:12 p.m., Deputy Sheriff David Barr of the Alamance County Sheriff's Department was dispatched to investigate an alarm sounding at defendant's residence, a double-wide mobile home located in Alamance County. Upon arrival, Officer Barr heard the alarm and observed that the rear door of defendant's residence was open. He announced his presence, identifying himself as a deputy with the Alamance County Sheriff's Department and requesting any person inside to exit the residence. Hearing no response, Officer Barr drew his handgun and with his flashlight entered the open door, continuing to announce his presence and identity. Officer Barr conducted a "cursory" visual search for potential victims or perpetrators within. He noticed several closed doors, but proceeded down an open hallway, entering the kitchen-living room area. In the kitchen, Officer Barr observed that many of the appliance doors were open and frozen food was sitting out on the counters. He looked over the living room and seeing no one, entered the master bedroom, where he saw a broken window with shattered glass and a concrete block laying on the floor. About then, Detective Brian Allen with the Alamance County Sheriff's Department arrived and Officer Barr briefed him on the situation and showed him the broken window.

The officers re-entered the residence to conduct a more thorough search than Officer Barr's initial inspection. Officer Barr testified that the two officers were "searching for persons, either injured or suspects or the owners of the house," and therefore "searched in every

STATE v. WOODS

[136 N.C. App. 386 (2000)]

bedroom and every area that was large enough to conceal a human being." (Tr. at 19). In the master bedroom they opened a drawer inside a standing chest which was approximately fifteen to twenty inches deep, twenty-five to thirty inches in length and eighteen inches wide. In this drawer, the officers discovered a bag of green vegetable matter and radioed for narcotics officers to come to the scene.

In the kitchen-living room area, they noticed two double-door cabinets, which Officer Barr estimated to be thirty-four inches tall and forty-eight inches wide. While attempting to open the doors to the cabinet, Officer Barr moved a chair and heard a noise beneath it. His flashlight revealed a tear on the bottom of the chair and a bag inside appearing to contain money. Officer Barr then opened the cabinet door, but found nothing.

At this point, the officers secured the residence to prevent entry or exit. At about 1:40 a.m. they obtained a search warrant and searched the entire residence. It was determined that the green vegetable matter in the chest of drawers was marijuana, and the bag beneath the chair contained $44,890. The search pursuant to the warrant revealed the following: two small bags of marijuana, a grocery bag containing marijuana, sandwich bags and rolling papers, a twelve-gauge shotgun, over $40,000 discovered throughout the residence, a white cardboard box containing fourteen vials of a white powder substance labeled "come back," used as an adulterant in the conversion of powdered cocaine to crack cocaine, and an electronic digital gram scale. All of this evidence was admitted in evidence at trial over defendant's objection.

[1] Defendant assigns as error the denial of his motion to dismiss, alleging that prosecution in this case was barred under the principle of double jeopardy. Defendant bases his claim of double jeopardy on the North Carolina Department of Revenue's collection of unpaid taxes on the seized drugs pursuant to the North Carolina Controlled Substance Tax Act, N.C. Gen. Stat. §§ 105-113.105 through 105-113.113 (1995) ("Drug Tax") in addition to prosecution against him in this case. Defendant was assessed $3271.28 and paid a portion of that amount on 12 August 1997, prior to the scheduled trial date.

Defendant contends the trial court's ruling must be reversed pursuant to *Lynn v. West*, 134 F.3d 582, 593-94 (4th Cir.), *cert. denied*, 525 U.S. 813, 142 L. Ed. 2d 36 (1998), where the Fourth Circuit held that the North Carolina Drug Tax constitutes criminal punishment. The

State asserts the trial court correctly denied defendant's motion to dismiss under *State v. Adams*, 132 N.C. App. 819, 513 S.E.2d 588, 589, *disc. rev. denied*, 350 N.C. 836, —— S.E.2d ——, *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 414 (1999), where a panel of this Court upheld assessment and collection of the Drug Tax against a challenge under the Double Jeopardy Clause. As we noted in *Adams*, with the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State. *Id.* Absent modification by our Supreme Court, a panel of this Court is bound by the prior decision of another panel addressing the same issue. *Id.* Accordingly, we are bound by our decision in *Adams* and defendant's assignment of error based on double jeopardy fails.

[2] Defendant next contends that the officers' warrantless entries into his residence violated the Fourth Amendment. Further, defendant argues that even if the officers' entries were permissible, the trial court improperly denied his motion to suppress all of the evidence seized on 8 August 1997, because the ensuing search and seizure violated the permissible scope of searches pursuant to the Fourth Amendment.

The Fourth Amendment grants individuals the right to be secure against unreasonable searches and seizures. *Mincey v. Arizona*, 437 U.S. 385, 390, 57 L. Ed. 2d 290, 298 (1978). The warrant requirement, imposed on government agents or officers who seek to enter for the purpose of search, seizure or arrest, is a principal protection against unreasonable intrusions into private dwellings. *Welsh v. Wisconsin*, 466 U.S. 740, 748, 80 L. Ed. 2d 732, 742 (1984). Under the general rule, a warrant supported by probable cause is required before a search is considered reasonable. *Trupiano v. United States*, 334 U.S. 699, 92 L. Ed. 1663 (1948). The warrant requirement is "subject only to a few specifically established and well-delineated exceptions," *Katz v. United* States, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967). The State argues that the "exigent circumstances" exception is applicable here.

The exigent circumstances exception has been extended to various circumstances where law enforcement officers are responding to an emergency, *Warden v. Hayden*, 387 U.S. 294, 298, 18 L. Ed. 2d 782, 787 (1967), and there is a "compelling need for official action and no time to secure a warrant," *Michigan v. Tyler*, 436 U.S. 499, 509, 56 L. Ed. 2d 486, 498 (1978). Where, for example, officers believe that persons are on the premises in need of immediate aid,

*Mincey v. Arizona*, 437 U.S. at 392, 57 L. Ed. 2d at 300, or where there is a need "to protect or preserve life or avoid serious injury," *id.* at 392-93, 57 L. Ed. 2d at 300, the Supreme Court has held that a warrantless search does not violate the Fourth Amendment. To justify a warrantless entry of a residence, there must be both probable cause and exigent circumstances which would warrant an exception to the warrant requirement. *State v. Wallace*, 111 N.C. App. 581, 586, 433 S.E.2d 238, 241 (1993). The burden generally rests on the State to prove the existence of exigent circumstances. *Chimel v. California*, 395 U.S. 752, 762, 23 L. Ed. 2d 685, 693 (1969).

Until now, we have not considered whether under the exigent circumstances exception to the warrant requirement of the Fourth Amendment law enforcement officers may enter a home without a warrant for the purpose of investigating a probable burglary. The United States Fourth Circuit, however, has considered whether an officer's warrantless entry into defendant's storage unit in response to indications of burglary violated the Fourth Amendment. *United States v. Dart*, 747 F.2d 263 (4th Cir. 1984). In *Dart*, defendant rented a storage unit located in a complex of storage units. *Id.* at 265. After receiving report of a break-in, an officer arrived at the complex and noted sawed-off locks and open doors on approximately ten units. Observing that the lock on defendant's unit was sawed off and the door was ajar, the officer entered the storage unit to determine whether any burglars remained. *Id.* at 265-66. Inside, the officer found no burglars, but instead uncovered several weapons beneath a blanket. *Id.* at 266. The *Dart* court held that the officer's initial warrantless entry did not violate the Fourth Amendment, since the complex had clearly been burglarized and the officer had reason to believe that the perpetrators could still be on the premises. *Id.* at 267.

State and federal courts in other jurisdictions generally agree that where an officer reasonably believes that a burglary is in progress or has been recently committed, a warrantless entry of a private residence to ascertain whether the intruder is within or there are people in need of assistance does not offend the Fourth Amendment. *See, e.g., In re Forfeiture of $176,598*, 505 N.W.2d 201 (1993) (allowing warrantless entry under the exigent circumstances doctrine when officers responded to a residential alarm sounding at night and upon arrival discovered that a window on the residence was broken and the security bars were pushed away and a lug wrench, a bar, and a skull cap was on the ground beneath the window); *see also United*

*States v. Valles-Valencia*, 811 F.2d 1232, 1236 (9th Cir.), *amended on other grounds*, 823 F.2d 381 (9th Cir. 1987); *Reardon v. Wroan*, 811 F.2d 1025, 1029-30 (7th Cir. 1987); *United States v. Singer*, 687 F.2d 1135, 1144 (8th Cir. 1982), *adopted in relevant part*, 710 F.2d 431 (8th Cir. 1983); *Carroll v. State*, 646 A.2d 376, 380-81 (Md. 1994) (citing *United States v. Johnson*, 9 F.3d 506, 509-10 (6th Cir. 1993)).

Here, we find that the officers' warrantless entries into defendant's residence did not violate the Fourth Amendment. The security alarm was sounding at the time Officer Barr arrived, and the back door to the residence was ajar. A cursory inspection revealed a recently broken window. It was clear an uninvited entry had been made at the residence and the officers had reason to believe that intruders or victims could still be on the premises. We conclude that both probable cause and exigent circumstances existed which justified the officers' warrantless entries.

But just because officers can justifiably enter a dwelling, that does not give them free rein in their search of the dwelling. The question becomes whether the scope of the ensuing searches was permissible. The searches here involved three separate pieces of furniture: a chest of drawers, a chair and a cabinet. The search of the chest of drawers will be analyzed separately from the search of the chair and cabinet.

We begin with the chest of drawers. We find that *Mincey v. Arizona* is dispositive as to the invalidity of the officers' search of the chest here. *Mincey* established that officers performing a search during the course of "legitimate emergency activities" may seize evidence of crime that is "in plain view." *Mincey*, 437 U.S. at 393, 57 L. Ed. 2d at 300. The marijuana seized from the cabinet here was not properly seized under the plain view doctrine.

The *Mincey* Court ruled that a lawful search for a killer at a homicide scene could not be extended to include opening dresser drawers and closed containers. *Id.* at 393, 57 L. Ed. 2d at 300. The Fourth Circuit has extended this prohibition of general intensive searches to a burglary investigation. *Dart*, 747 F.2d at 268-69. We find this interpretation to be persuasive. Indeed, the circumstances favoring a legitimate search in this case were substantially weaker than those in *Mincey*. *See also United States v. Presler*, 610 F.2d 1206, 1211 (4th Cir. 1979) (officers' search pursuant to burglary investigation held violative of Fourth Amendment under *Mincey*). In *Mincey*, the residence searched was the scene of a recent murder. Here, the officers

had no reason to believe that a murder had been committed on the premises. If the search in *Mincey* of drawers and closed containers could not be justified on those facts, the search of the chest of drawers here must be held to violate the Fourth Amendment proscription against unreasonable searches.

Next we turn to the search of the chair and kitchen cabinet. The *Mincey* Court recognized that the scope of a warrantless search must be " 'strictly circumscribed by the exigencies which justify its initiation.' " 437 U.S. at 393, 57 L. Ed. 2d at 300 (quoting *Terry v. Ohio*, 392 U.S. 1, 25-26, 20 L. Ed. 2d 889, 908, (1968)). Thus, the ensuing search is reasonable under the circumstances only in so far as it furthers the stated purpose for entering. *United States v. Moss*, 963 F.2d 673, 679 (4th Cir. 1992). The exigency which justified the entry here was the officers' belief that either intruders or victims could have been on the premises. Accordingly, the search must have been confined to areas that could have concealed a body.

At best, only a small child could have fit into this cabinet. Furthermore, a chair was in front of the cabinet. Thus, to justify their search of this cabinet, the officers would have had to believe the intruder had taken time to stuff a small child into the cabinet and place a chair in front of the cabinet before exiting the dwelling. We find such belief to be unreasonable—especially considering that the burglar alarm was sounding the entire time. The chair was moved to enable the officer to search the cabinet and in so doing the money in its bottom was discovered. Thus, the search of the cabinet here exceeded the permissible scope of the officers' search, as did the search of the chair.

We conclude that the officers' warrantless searches of the chest of drawers, chair and cabinet did not comport with the defined exceptions to the warrant requirement. Failure to obtain a warrant before searching any of these items, therefore, clearly violated defendant's constitutional rights. Evidence obtained by unlawful activity by the State may not be admitted in evidence absent some valid means, independent of the wrongdoing, through which the evidence would have been discovered. *State v. Moore*, 275 N.C. 141, 146, 166 S.E.2d 53, 57 (1969) (citing *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081 (1960)). Finding no independent source through which this evidence would have been discovered, we conclude that neither the marijuana nor the $44,890 was admissible. The marijuana is contraband and the money may well be subject to no taxes and the subject of legitimate earnings.

**[3]** The remaining evidence in this case was seized pursuant to a warrant. Possession of the warrant, however, did not legitimate this search. A warrant issued on the basis of tainted evidence is invalid. *Dart*, 747 F.2d at 270 (citing *United States v. Langley*, 466 F.2d 27 (6th Cir. 1972) (holding that where tainted information comprises more than a "very minor portion" of that found in an affidavit supporting a search warrant, the warrant must be held invalid). Because the illegally discovered marijuana and cash comprised more than a minor portion of the evidence establishing probable cause, we conclude that the fruits obtained pursuant to the search under the warrant here were not admissible. Accordingly, the trial court improperly denied defendant's motion to suppress all of the evidence seized from defendant's residence on 8 August 1997.

In light of our holding as to the motion to suppress, we need not address defendant's remaining assignments of error.

Vacated and remanded.

Judges JOHN and McGEE concur.