INMAN, Judge.
Edgar Castaneda-Pena ("Defendant") appeals from a judgment entered after he pleaded guilty to drug-related offenses. On appeal, Defendant argues that police officers' search of his vehicle violated his Fourth Amendment protections against unreasonable searches and seizures, and that the trial court therefore erred in denying his motion to suppress evidence gathered as a result of that search. We affirm the trial court's ruling because the circumstances of the search satisfy the automobile exception to the Fourth Amendment's warrant requirement.
Factual and Procedural History
The evidence heard by the trial court tends to show the following: On 10 March 2015, Detective Dwayne James ("Detective James") and Officer Roberto Monge ("Officer Monge"), both with the Greensboro Police Department, travelled to Burlington, North Carolina to investigate an alleged cocaine supplier. With the assistance of a confidential and reliable informant and while working undercover, Detective James purchased an ounce and a half of cocaine from the specified target, Gilberto Salinas-Valdez ("Salinas-Valdez").
Salinas-Valdez introduced Detective James to Defendant. Detective James told Salinas-Valdez and Defendant that he was interested in purchasing five kilograms of cocaine for $40,000 each, totaling $200,000. Defendant told Detective James that he had the five kilograms on hand and was ready to make the exchange. Detective James requested a few days to gather the necessary funds and asked that the future exchange take place in Greensboro.
The informant arranged a meeting two days later in Greensboro between Detective James, Defendant, and Salinas-Valdez. The three men met on 12 March 2015 in a Waffle House parking lot on Randleman Road. Defendant arrived in a silver Toyota Camry, parked, exited his vehicle, and entered Detective James's vehicle. After Detective James showed Defendant at least $40,000 in cash, Defendant said he had the cocaine "right there" and pointed toward the back seat/trunk area of the silver Toyota Camry. Defendant urged Detective James to make the exchange right away. However, because the police back-up team had not yet fully assembled, Detective James delayed the transaction. He pointed to a Waffle House surveillance camera and asked Defendant to change location so that the transaction would not be recorded.
Detective James told Defendant that he had a warehouse nearby that would be more appropriate for the transaction, and Defendant agreed to follow him there. Defendant exited Detective James's vehicle and reentered the Toyota Camry. The two cars then began traveling down Interstate 40, driving in tandem, with Detective James leading the way. Meanwhile, the police back-up team, including Officer Monge, coordinated surveillance and monitoring of Defendant and Detective James in transit.
As Detective James continued driving on the interstate followed by Defendant, Officer Monge grew concerned that Defendant might abandon the transaction because it was delayed, and decided police should stop Defendant once the Toyota Camry exited Interstate 40 and was driving on a less congested city street. Before the stop, Detective James told Officer Monge that he was confident Defendant had the cocaine in the back of the Toyota Camry. After Defendant exited the highway, a Greensboro Police Department patrol car with a drug-sniffing dog unit pulled up behind Defendant's car and activated its blue lights.
Police determined that the traffic stop area was too congested and dangerous for a dog to sniff, and decided to move the Toyota Camry and its occupants (Salinas-Valdez and Defendant) to a nearby Greensboro Police Department substation. The substation was a three-minute drive from the initial stop. After police parked the Toyota Camry in the substation's lot, a drug-sniffing dog alerted on the rear of the car. Police searched the car and found two kilograms of cocaine inside a speaker in the back seat/trunk area. Officers then arrested both Defendant and Salinas-Valdez.
Defendant was indicted on 20 July 2015 for two counts of trafficking in 400 or more grams of cocaine and one count of maintaining a vehicle or dwelling place used for the keeping and selling of cocaine, a controlled substance.
Defendant filed a motion to suppress the cocaine, alleging that the search violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 20 of the North Carolina Constitution. After hearing sworn testimony and argument from counsel on 1 March 2016, Judge Susan E. Bray denied the motion. Judge Bray announced her ruling from the bench and entered a written order on 8 March 2016.
Two weeks after the motion to suppress was denied, on 21 March 2016, Defendant pleaded guilty to two counts of trafficking in 400 grams or more of cocaine and one count of maintaining a vehicle or dwelling for keeping or selling controlled substances, expressly reserving his right to appeal the denial of his motion to suppress. Defendant was sentenced to 175 to 222 months imprisonment. Defendant gave oral notice of appeal and filed written notice of appeal.
On 19 September 2016, Defendant filed a petition for writ of certiorari, seeking review of the case to the extent his notice of appeal was defective. On 28 September 2016, this Court issued an order allowing the petition.
Analysis
I. Standard of Review
This Court's review of a ruling on a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). "However, when, as here, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." State v. Biber , 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citations omitted). "A trial court's conclusions of law on a motion to suppress are reviewed de novo and are subject to a full review, under which this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." State v. Ashworth , --- N.C. App. ----, ----, 790 S.E.2d 173, 179-80 (2016).
II. Preliminary Issue
When ruling from the bench at the conclusion of the hearing, the trial court denied the motion to suppress based on the automobile exception to the warrant requirement. But in its written order, the trial court concluded that the search of the Toyota Camry was justified as incident to arrest. Because we hold that the trial court's ultimate ruling was correct, the differences in the trial court's legal reasoning in its oral and written rulings do not compel reversal.
A ruling denying a motion to suppress evidence in a criminal case may be upheld despite concern with the trial court's underlying, expressed reasoning. See State v. Gardner , 316 N.C. 605, 609, 342 S.E.2d 872, 875 (1986). When reviewing the denial of a motion to suppress, "[a] correct decision of a lower court will not be disturbed on review simply because an insufficient or superfluous reason is assigned." State v. Austin , 320 N.C. 276, 290, 357 S.E.2d 641, 650 (1987) (citation omitted). "The question for review is whether the ruling of the trial court was correct and not whether the reason given therefor is sound or tenable. The crucial inquiry ... is admissibility and whether the ultimate ruling was supported by the evidence." Id. at 290, 357 S.E.2d at 650.
Here, both the oral and the written order reached the same ultimate ruling: Defendant's motion to suppress was denied based on an exception to the warrant requirement. Each ruling was couched in an alternative rationale. Ultimately, though, the satisfaction of only one exception to the warrant requirement is necessary because our inquiry on appeal is whether the ruling itself is correct.
III. The Automobile Exception
Defendant contends that the search of the Toyota Camry did not fit within the automobile exception because the vehicle was seized by police and therefore not inherently mobile at the time of the search. Because the police had probable cause to search the car and circumstances of the traffic stop area warranted the car's removal to a nearby police substation, we reject Defendant's argument, and hold that the automobile exception does apply under the facts of this case.
The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This prohibition applies to the states under the Due Process Clause of the Fourteenth Amendment. State v. Thorpe , 232 N.C. App. 468, 477, 754 S.E.2d 213, 220 (2014). Article I, Section 20 of the North Carolina Constitution similarly protects against unreasonable searches and seizures. N.C. Const. art. I, § 20. "Under the general rule, a warrant supported by probable cause is required before a search is considered reasonable." State v. Woods , 136 N.C. App. 386, 390, 524 S.E.2d 363, 365 (2000). This warrant requirement "is subject only to only a few specifically established and well-delineated exceptions." Id. at 390, 524 S.E.2d at 365 (quoting Katz v. United States , 389 U.S. 347, 357, 19 L.Ed. 2d 576, 585 (1967) ).
One such exception to the general warrant requirement is the automobile exception. State v. Mitchell , 224 N.C. App. 171, 174, 735 S.E.2d 438, 441 (2012). Under this exception, "[a]n officer may search an automobile without a warrant if he has probable cause to believe the vehicle contains contraband." State v. Poczontek , 90 N.C. App. 455, 457, 368 S.E.2d 659, 660-61 (1988) (citations omitted). The scope of this search encompasses the entire vehicle, including closed containers. State v. Parker , 183 N.C. App. 1, 10, 644 S.E.2d 235, 242 (2007). "An officer has probable cause to believe that contraband is concealed within a vehicle when given all the circumstances known to him, he believes there is a 'fair probability that contraband or evidence of a crime will be found' therein." State v. Ford , 70 N.C. App. 244, 247, 318 S.E.2d 914, 916 (1984) (quoting Illinois v. Gates , 462 U.S. 213, 238, 76 L.Ed. 2d 527, 548 (1983) ).
In this case, information available to police prior to the stop included Defendant's own statement to Detective James that the cocaine was in the rear of the Toyota Camry. "Statements against penal interest carry their own indicia of credibility sufficient to support a finding of probable cause to search." State v. Beam , 325 N.C. 217, 221, 381 S.E.2d 327, 330 (1989). Additionally, the positive alert by the drug sniffing dog bolstered probable cause to search the vehicle. State v. Washburn , 201 N.C. App. 93, 100, 685 S.E.2d 555, 560 (2009).
Here, the trial court's findings of fact support the conclusion that the police had probable cause to believe that the vehicle contained a controlled substance. Minutes before the stop, Defendant pointed to the back seat/trunk area of the Toyota Camry and assured an undercover detective, Detective James, that cocaine was located there and was available for sale. A drug-sniffing dog later alerted on the rear of the vehicle. As Defendant has not challenged any of these factual findings, all are binding on appeal. Keeter v. Lake Lure , 264 N.C. 252, 257, 141 S.E.2d 634, 638 (1965).
Considered in their totality, these circumstances gave more than a fair probability that the Toyota Camry contained cocaine on 12 March 2015. Defendant's statements regarding the location of the cocaine and its availability for sale, as statements against his penal interest, were sufficient alone to support a finding of probable cause to search the vehicle for cocaine. The alert of a drug-sniffing dog only bolstered this initial finding of probable cause. Notably, Defendant has not argued on appeal that police lacked probable cause to search the vehicle. The automobile exception permits warrantless searches where, as here, police have probable cause to believe the car contains contraband.
Defendant's argument that the automobile exception is inapplicable because his car was parked at a police substation and under the control of police at the time of the search is misplaced. The United States Supreme Court, North Carolina Supreme Court, and this Court have all held that where probable cause exists to search a vehicle, that vehicle may be moved to another location for a subsequent search.
The automobile exception was first articulated by the United States Supreme Court in Carroll v. United States , 267 U.S. 132, 69 L.Ed. 543 (1925). See State v. Isleib , 319 N.C. 634, 636-37, 356 S.E.2d 573, 575 (1987). In Chambers v. Maroney , 399 U.S. 42, 26 L.Ed. 2d 419 (1970), the Court applied the exception to an automobile search that occurred after the automobile had been seized and moved to a nearby police station. In Chambers , two witnesses to a gas station robbery observed the robbers drive away in a blue compact station wagon driven by four men; police later stopped a blue compact station wagon driven by four men. Id. at 44, 26 L.Ed. 2d at 424. The men were arrested, and the station wagon was driven to a nearby police station where it was later searched. Id. at 44, 26 L.Ed. 2d at 424. The Court held that the warrantless search of the vehicle was constitutional under the automobile exception to the warrant requirement. Id. at 47, 26 L.Ed. 2d at 426. In so holding, the Court noted that "Carroll , supra, holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is moveable, the occupants alerted, and the car's contents may never be found again if a warrant must be obtained." Id. at 51, 26 L.Ed. 2d at 428. Applying Carroll , the Court determined that there had been probable cause to search the vehicle at the time of the initial stop and held that such "probable-cause factor still obtained at the station house[.]" Id. at 52, 26 L.Ed. 2d at 428-29. This rule was later in applied in Texas v. White , 423 U.S. 67, 46 L.Ed. 2d 209 (1975), in which the Court recognized that "[i]n Chambers v. Maroney [,] we held that police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant" and held that "[t]here, as here, the probable-cause factor that developed at the scene still obtained at the station house." Id. at 68, 46 L.Ed. 2d at 211 (internal quotation marks omitted).
The North Carolina Supreme Court applied these holdings in State v. Jones , 295 N.C. 345, 245 S.E.2d 711 (1978). In Jones , the Court determined that:
We think Chambers and White mean that where an automobile is stopped on or near a public street or highway and there is probable cause to search at the scene, this may constitute exigent circumstances permitting police to impound the automobile. We understand White to hold, moreover, that where probable cause exists to search an automobile and circumstances warrant removing it for a search at some other location, such as the police station, the exigent circumstances requirement is satisfied and a warrantless search may be conducted within a reasonable time at the location to which the automobile is removed.
Id. at 354, 245 S.E.2d at 716 (internal quotation marks omitted).
This Court used similar reasoning in State v. White , 82 N.C. App. 358, 362-63, 346 S.E.2d 243, 246 (1986), in which police seized and removed a parked car that they had probable cause to believe contained evidence of criminal conduct because they discovered a stolen stereo in plain view in the back of a parked car. Id. at 360-61, 346 S.E.2d at 245. The owner of the car was arrested, and the car was towed to a local police station and searched, where additional stolen items were discovered. Id. at 361, 346 S.E.2d at 245-46. This Court held that the warrantless search of the vehicle at the police station was valid pursuant to the automobile exception. Id. at 363, 346 S.E.2d at 246-47. In so holding, this Court noted that "exigent circumstances existed in the present case which would have justified an immediate warrantless search of defendant's automobile in the parking lot, and which did justify its seizure and removal to the police station." Id. at 363, 346 S.E.2d at 247. "The right to make a warrantless search and seizure having accrued, it is of no consequence that the search was not conducted at the parking lot; the officers could search the vehicle at the parking lot or could seize it and search it at police headquarters." Id. at 363, 346 S.E.2d at 247.
Here, Defendant was stopped while driving his vehicle on a public street. At the time of the initial stop, police had probable cause to believe that the vehicle contained contraband and evidence of a crime. Minutes before the stop, Defendant, introduced to police by a confidential reliable informant, had admitted that he had cocaine available for sale in the rear of his car. The right to conduct a warrantless search having therefore accrued, it is of no consequence that the vehicle was removed to a nearby police station before the search. Circumstances of the road and traffic stop warranted the car's removal to the nearby police station. Additionally, before the search, this finding of probable cause was bolstered by the alert of a drug-sniffing dog on the rear of Defendant's vehicle. The removal of the vehicle to the police station did not render the subsequent search unconstitutional.
Because we affirm the denial of Defendant's motion to suppress based on the automobile exception, we need not address whether the warrantless search was permissible because it occurred incident to Defendant's arrest.
Conclusion
Because law enforcement officers did not violate Defendant's rights protected by the Fourth Amendment, we affirm the trial court's order denying the motion to suppress.
AFFIRMED.
Report per Rule 30(e).
Judges CALABRIA and MCCULLOUGH concur.