[No. 12554-4-II. Division Two. June 21, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. KEITH DANIEL MORGAVI, *Appellant*.

*Steven W. Thayer,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Michael B. Dodds, Deputy,* for respondent.

ALEXANDER, C.J.—Keith Morgavi appeals his conviction of one count of felony possession of marijuana. He assigns error to the trial court's denial of his motion to suppress, claiming that a search of his garage was not justified under the exigent circumstances exception to the warrant requirement of the federal and state constitutions. We reverse.

Three times during the week prior to August 19, 1988, Officer Gunderson of the Vancouver Police Department drove to the residence of Keith Morgavi in order to investigate Morgavi's possible involvement in acts of malicious mischief. On each occasion, all doors to the house appeared to be closed and locked, as were the doors to the garage. No vehicles were observed in the driveway leading to the garage. Officer Gunderson was unable to locate Morgavi at the house during any of these visits.

On August 19, Gunderson again drove to Morgavi's house. This time he noticed that the front and side doors to the garage were open and that one of the hinges on a front door was broken. He observed a car parked in the driveway in front of the garage with its driver's side window rolled down. Gunderson noticed also that the screen door to an enclosed porch on the back side of the house was propped open and that the door leading from the porch to the basement was open as well. Gunderson concluded from these observations that a burglary had occurred on the property and he, therefore, radioed for a backup officer.

When the other officer arrived, the two officers approached the garage and entered it through the front doors. Before exiting the garage through a rear side door, they noticed marijuana plants in a glass terrarium and on a

shelf. The officers then left the garage and headed for the enclosed porch. Standing outside the porch, Officer Gunderson saw electric wiring, of the type used for halide lights, going into the basement. He also noticed a mylar curtain and several 5–gallon plastic buckets. Gunderson knocked on the back door and was invited in by Morgavi. After reading Morgavi his *Miranda* warnings, the officers questioned him about the malicious mischief incident. The officers then told Morgavi about the marijuana they had observed in his garage and they asked him if they could search his house and garage. Morgavi consented to the search and showed the officers some additional marijuana. A search of Morgavi's house turned up a total of 311 grams of marijuana. Morgavi was charged in Clark County Superior Court with one count of felony possession of a controlled substance.

Before trial, Morgavi moved to suppress the evidence found in the search. The motion was denied. Thereafter, on stipulated facts, Morgavi was found guilty of the charge.

The parties agree that there is only one issue in this case: was the warrantless entry into Morgavi's garage a valid search under the exigent circumstances exception to the warrant requirement of both the state and federal constitutions?[1] As a general principle, both the Fourth Amendment to the federal constitution and article 1, section 7 of the Washington State Constitution prohibit a warrantless, nonconsensual entry into a constitutionally protected area. *State v. Terrovona*, 105 Wn.2d 632, 644, 716 P.2d 295

---

[1]The reason this is the only issue on appeal is that the trial court's denial of the suppression order was based solely on what it believed was the officers' justifiable entry into the garage. The trial court's conclusions read, in pertinent part, as follows:

7. There is not a sufficient attenuation of the garage and residence to separate the observations of the garage from the request for consent and therefore the entry into the garage must be justified under an exception to obtaining a search warrant.

8. The court recognizes that the garage is a constitutionally protected area and finds as a conclusion that the only saving point of the search is the officers' justification for being there.

(1986) (U.S. Const. amend. 4); *State v. Ringer,* 100 Wn.2d 686, 690, 674 P.2d 1240 (1983) (Const. art. 1, § 7), *overruled in part in State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986). This prohibition is subject to exception, however, where the police are presented with exigent circumstances. *State v. Bean,* 89 Wn.2d 467, 472, 572 P.2d 1102 (1978).

 In determining whether the exigencies of a particular case permit the police to conduct a warrantless search, "[t]he totality of circumstances said to justify a warrantless securing or search of a house under the doctrine of exigent circumstances will be closely scrutinized." *State v. Bean, supra.* In a later case, the court enumerated six factors which are to be used in determining when a warrantless entry into a home is justified:

> (1) a grave offense, particularly a crime of violence, is involved; (2) the suspect is reasonably believed to be armed; (3) there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) the suspect is likely to escape if not swiftly apprehended; and (6) the entry is made peaceably.

*Terrovona,* 105 Wn.2d at 644 (citing *Dorman v. United States,* 435 F.2d 385, 392–93 (D.C. Cir. 1970)).

In order for the exigent circumstances exception to apply, a reviewing court must be satisfied that the claimed emergency "was not simply a pretext for conducting an evidentiary search and instead was 'actually motivated by a perceived need to render aid or assistance.'" *State v. Lynd,* 54 Wn. App. 18, 21, 771 P.2d 770 (1989) (quoting *State v. Loewen,* 97 Wn.2d 562, 568, 647 P.2d 489 (1982)). To this end, the State must show that the officer held both a subjective, as well as an objectively reasonable belief that an emergency existed. *State v. Lynd, supra* (also citing *State v. Loewen, supra*).

Here, the claimed emergency is a burglary that the officers suspected was either in progress or had already been completed. Acting on their belief that an emergency existed, the two officers entered the garage because "it was unknown if anyone was still there or not." The State argues

that because the officers held a subjective belief that a burglary was in progress, they were justified in entering the garage under the exigent circumstances exception.

There can be no doubt that in this case the officers held a subjective belief that an emergency existed. They both testified at the suppression hearing that they were investigating a burglary.[2] Indeed, the second officer had been summoned by Gunderson on the ground that a burglary may have then been in progress. Although the defendant argues that the search here was a mere pretext, that argument fails. It appears that, before they entered the garage, the officers had no reason to believe that there was marijuana on the premises. They were there investigating a malicious mischief charge and a possible burglary. They were not looking for marijuana.

The more pertinent question is whether, from an objective standpoint, it was reasonable for the officers to believe that a burglary had occurred or was occurring. The facts here are somewhat akin to those in the cases of *State v. Campbell*, 15 Wn. App. 98, 547 P.2d 295 (1976) and *State v. Bakke*, 44 Wn. App. 830, 723 P.2d 534 (1986), *review denied*, 107 Wn.2d 1033 (1987). In *Campbell*, the defendant's neighbor summoned the police after observing a burglary in progress and watching a suspect flee the scene. Upon arrival, the police spoke with the neighbor and discovered a broken window and a wide–open door at the burglarized apartment. The officer immediately entered the

---

[2]Officer Gunderson testified as follows:

"It was my thought that there had been possibly a burglary occurred because of the damage that appeared to the doors and the fact that they were standing open.

"The first thing we did was we checked the garage, considering this was possibly a burglary. Because of the condition of the doors, it was unknown if anyone was still there or not. We first looked at the car and then went in to make sure that there was nobody inside."

Officer Swafford testified as follows:

"[Gunderson] thought he might have had a burglary, so he asked me to respond to go in with him to check it out.

"We just walked up to where we saw [the marijuana in the garage] and looked around to make sure no one was inside the area."

apartment, without benefit of a warrant, "to investigate the recent crime, to look for possible participants in the burglary, to search for evidence of the burglary, and to aid any victims. . . ." *Campbell*, 15 Wn. App. at 99. During the search, seven marijuana plants were discovered. Division One of this court found this search to be valid, concluding that it met the emergency or exigent circumstances exception. It said at page 100:

> It is reasonable for officers, *responding to a request for police assistance* and with probable cause to believe that an open, unsecured dwelling has been recently burglarized, to immediately enter the dwelling without a warrant for the limited purposes of investigating the crime, rendering aid to any possible victims of the felony, protecting the occupant's property, and searching for remaining suspects.

(Italics ours.)

Similarly, in *State v. Bakke, supra,* Division One reversed a suppression order and dismissal of charges in a case in which the defendant's neighbor summoned the police to respond to a burglary in progress. The neighbor had seen two juveniles running from the back door of the defendant's home. Upon arrival, the police spoke with neighbors and discovered that the window in the back door to the defendant's house had been broken and that the hole was large enough to accommodate a juvenile's body. The police also noted that fresh muddy footprints extended from the back door, through an enclosed porch to an interior door that had been broken from its jam. Without a warrant, the officers entered the house "to locate any suspects and secure the safety of the house and its contents." *Bakke*, 44 Wn. App. at 832. They found no suspects but saw two marijuana plants and some growing paraphernalia. Based on those facts, they obtained a warrant to search the house further. During the follow-up search, they found several marijuana plants and a grow light. The trial court suppressed this evidence, concluding that the initial search was illegal and that the warrant was issued on the basis of evidence found in that illegal search. On review, Division

One reversed, concluding that exigent circumstances justified the warrantless search.

 Despite the fact that this case bears some similarity to *Campbell* and *Bakke,* these facts, when viewed from an objective standpoint, do not support a finding of exigent circumstances. There simply is insufficient evidence that a burglary had occurred. The facts that led the officers to believe that a burglary was in progress or had recently taken place consisted of the presence of a car in front of the garage, opened and partially broken doors to the garage, an open back door to the house and an open side door to the garage. These observations, while perhaps enough to raise suspicions, were not enough to support a reasonable belief that a crime had occurred or was occurring on the premises. Indeed, these observations were consistent with any number of innocent explanations. These facts are distinguishable from those in *Campbell* and *Bakke* in a significant aspect. In each of those cases, the police were summoned to the premises by concerned neighbors who had witnessed the burglaries and the flight of suspects. In both of those cases the police officers were not following their own hunch that a crime had occurred, but rather, were responding to the report of a third party who had actually witnessed the crime. This is the common thread that runs through most of the cases that have addressed this issue. *See State v. Lynd, supra* (police entered house in response to a 911 telephone call in which the caller hung up before explaining why he or she had called); *State v. Bakke, supra; State v. Downey,* 53 Wn. App. 543, 768 P.2d 502 (1989) (officers entered house to investigate a report of a strong odor of ether); *State v. Welker,* 37 Wn. App. 628, 683 P.2d 1110 (1984) (police made warrantless entry into residence in response to a telephone call from a woman who said she had just been raped); *State v. Gallo,* 20 Wn. App. 717, 582 P.2d 558 (assault victim summoned police to house), *review denied,* 91 Wn.2d 1008 (1978); *State v. Nichols,* 20 Wn. App. 462, 581 P.2d 1371 (1978) (complainant summoned police to a fight in progress and directed them toward the

house where the fight had allegedly occurred); *State v. Campbell, supra; State v. Sanders,* 8 Wn. App. 306, 506 P.2d 892 (1973) (telephone operator traced a call made by a caller who dropped the receiver leaving the line open and the operator summoned the police to the address of the telephone to investigate). In each of these circumstances, the police clearly had a reason to investigate what had been described as an emergency. Here, the emergency was not apparent. The observations of both officers were simply not enough to justify their entry onto the premises without a warrant.

Reversed.

PETRICH, J., and DRAPER, J. Pro Tem., concur.