STATE OF NORTH CAROLINA
v.
MICHAEL PAUL MILLER

No. COA13-81

Filed 6 August 2013

1. **Search and Seizure—fruit of the poisonous tree—illegal search of dresser—subsequent legal search of closet**

The fruit of the poisonous tree doctrine did not require exclusion of marijuana found in a closet in a house being searched for intruders where the exigent circumstances justified entry into the house and a K-9 indicated that someone might be hiding in a closet. There was no support for defendant's contention that the officers could not resume a lawful search after an unconstitutional search of a dresser drawer before the closet was opened.

2. **Search and Seizure—plain view—trash bags inside closet—conflict in evidence**

A ruling that marijuana found in trash bags in a closet was in plain view was remanded to resolve a conflict in the evidence as to whether the bags were open when officers opened the door or whether a K-9 caused them to partially open by sniffing inside them.

Appeal by defendant from judgment entered 23 May 2011 by Judge Joseph N. Crosswhite in Rowan County Superior Court. Heard in the Court of Appeals 5 June 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for the State.*

*William Trippe McKeny for defendant.*

HUNTER, Robert C., Judge.

Defendant Michael Paul Miller appeals from the judgment entered against him after he pled guilty to possession with intent to sell and/or deliver marijuana, maintaining a dwelling house for marijuana, and carrying a concealed gun. On appeal, defendant argues that the trial court erred in denying his motion to suppress the marijuana found in his hallway closet because: (1) the marijuana constituted fruit of the poisonous tree; and (2) the trial court erred in concluding that it was in plain view. After careful review, we remand to the trial court for further proceedings consistent with this opinion.

## Background

Defendant Michael Miller was indicted on 3 August 2009 on charges of possession with intent to sell or deliver marijuana; maintaining a dwelling house for keeping, storing, using and/or selling marijuana; and carrying a concealed handgun in his vehicle. Defendant filed a motion to suppress all the evidence seized during the search of his house. The matter came on for hearing on 4 April 2011. The evidence presented at the hearing tended to establish the following: On 4 May 2011, at approximately 1:05 a.m., Officer Brian Hill ("Officer Hill"), a police officer with the Spencer Police Department, responded to a call that a burglar alarm was going off at 404 South Baldwin Avenue in Spencer, N.C. After arriving at the house, Officer Hill was making his way around the house and found two large ziploc bags of what appeared to be marijuana sitting on concrete steps that led to a side door. He took possession of the bags and

placed them in his car. Then, Officer Hill resumed his search of the outside of the home and noticed that a window at the back of the house was broken; he testified that "it appeared entry had been made." Believing that someone had entered the home and that a suspect may still be inside, Officer Hill requested additional units assist him in searching the residence. Officer Hill contacted the Salisbury Police Department with his request and specifically requested a K-9 unit respond. Officer Jason Fox ("Officer Fox"), an officer with the East Spencer Police Department, arrived on scene with "Jack," his canine. Jack is trained not only to detect narcotics but also to search for suspects. Shortly thereafter, Ms. Weant, defendant's mother, showed up at the house. After ascertaining that she had a key to defendant's home, Officer Hill explained the situation to her, and Ms. Weant gave the officers permission to enter the home.

After unlocking the front door, Officer Fox and Officer Hill announced that they were law enforcement and warned that they had a canine unit with them to deploy inside the home. After the announcements, Officer Fox released Jack into the premises. Initially, Jack went into a bedroom on the right side of the house. Officer Hill testified that when he and Officer Fox walked into the bedroom, a dresser drawer was open, and they could see a large quantity of brick marijuana laying in the top drawer. In contrast, Officer Fox testified that after entering the bedroom, he noticed Jack was sitting and staring at the dresser, indicating that it contained narcotics. Officer Fox then opened the dresser drawer, found the marijuana, and showed the marijuana to Officer Hill.

Since they still had not finished clearing the residence, Officer Fox redeployed Jack to check the rest of the house for a possible intruder. Jack stopped in front of a closet door in the hallway of the home and began barking at the closet door. Officer Fox testified that, generally, barking indicates that Jack has located a suspect. Based on their concern that someone was hiding in the closet, the officers opened the closet door and saw two large trash bags, partially opened, containing marijuana. Officer Fox testified that he and Officer Hill did not have to manipulate the trash bags in order to see the marijuana; it was visible when they looked in the closet. However, Officer Fox did note that when they opened the closet door, Jack began sniffing the plastic bags, causing them to partially open up. They did not do anything with the marijuana at that time but continued searching the rest of the residence for suspects.

After clearing the house, Officer Hill contacted Sergeant Eric Ennis ("Sergeant Ennis"), his investigator, in order to obtain a search warrant. At that point, defendant arrived on the scene. Officer Hill asked

STATE v. MILLER

[228 N.C. App. 496 (2013)]

defendant whether there was anything in his vehicle that he needed to know about; defendant told Officer Hill he had a handgun under the front seat. After Sergeant Ennis obtained his search warrant, he took possession of the bags of marijuana from the closet and the marijuana from the dresser.

At the end of the hearing, the trial court concluded that the officers deviated from their search for suspects by opening the dresser drawer. Accordingly, the trial court held that opening the drawer violated defendant's constitutional rights, and it granted the motion to suppress with regard to the marijuana found in defendant's dresser. With regard to the marijuana in the closet, the trial court concluded that it was discovered when the officers had resumed their search for suspects and was in plain view, even though Officer Fox testified that the bag may have been closed until Jack stuck his nose in it. Thus, the trial court denied defendant's motion to suppress with regard to the marijuana found in the hallway closet.[1]

After the motion to suppress was denied in part, defendant entered an *Alford* plea as to all charges. The trial court sentenced defendant to a minimum of five months to a maximum of six months imprisonment for the charges of maintaining a dwelling for the keeping or selling of controlled substances and carrying a concealed handgun. However, the trial court suspended his sentence and placed defendant on 24 months of supervised probation. Defendant appealed.[2]

### Arguments

[1] First, defendant argues that, pursuant to the fruit of the poisonous tree doctrine, the trial court erred in denying his motion to suppress

---

1. The trial court also denied defendant's motion to suppress with regard to the gun in his car and the marijuana found on the back steps. Specifically, the trial court concluded that defendant was not in custody when he voluntarily told the officer about the gun in his vehicle. Moreover, the trial court held that the marijuana on the back steps was in plain view. On appeal, defendant does not challenge the denial of his motion to suppress with regard to these two pieces of evidence. Thus, these issues are deemed abandoned on appeal, N.C. R. App. P. 28(b)(6) (2012), and we will not determine whether the trial court erred in denying defendant's motion to suppress with regard to them.

2. Prior to the current appeal, defendant unsuccessfully attempted to appeal the denial of his motion to suppress. In an unpublished case, this Court dismissed defendant's appeal for failing to include the judgments entered upon his guilty plea in the record on appeal and for failing to indicate on his notice of appeal which final judgment he was appealing. *State v. Miller*, __ N.C. App. __, 723 S.E.2d 584 (April 17, 2012) (COA11-1177) (unpublished). However, after the opinion was filed, defendant filed a Petition for Writ of *Certiorari* (P12-717) on 22 August 2012 which was allowed to review the judgments entered against defendant on 23 May 2011.

with regard to the marijuana in the closet after it found the officers violated his constitutional rights by opening the dresser drawer. In other words, defendant contends that once officers violated his constitutional rights by opening the dresser drawer, their subsequent discovery of the drugs in the closet is inadmissible as fruit of the poisonous tree. We disagree.

"The governing premise of the Fourth Amendment is that a governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement involving exigent circumstances." *State v. Cooke,* 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982) (citations omitted). To determine whether exigent circumstances existed such that an officer was authorized to conduct a warrantless search, the Court must look at the totality of the circumstances. *State v. Nowell,* 144 N.C. App. 636, 643, 550 S.E.2d 807, 812 (2001), *aff'd per curiam,* 355 N.C. 273, 559 S.E.2d 787 (2002).

Based on the circumstances of the present case, the officers' warrantless entries into defendant's home did not violate the Fourth Amendment because they were justified to enter based on exigent circumstances. Prior to *State v. Woods,* 136 N.C. App. 386, 391, 524 S.E.2d 363, 366 (2000), our Courts had not considered whether "under the exigent circumstances exception to the warrant requirement of the Fourth Amendment law enforcement officers may enter a home without a warrant for the purpose of investigating a probable burglary." In *Woods,* we recognized the general consensus from other states and federal jurisdictions that "where an officer reasonably believes that a burglary is in progress or has been recently committed, a warrantless entry of a private residence to ascertain whether the intruder is within or there are people in need of assistance does not offend the Fourth Amendment." *Id.* This Court concluded that the officers were justified in entering the defendant's home without a warrant under the exigent circumstances doctrine because the security alarm was sounding, officers found a back door ajar, a window was broken, and officers had a reasonable belief that the intruders or a victim could be inside. *Id.*

Here, as in *Woods,* based on the exigent circumstances exception, the officers' warrantless entry into defendant's home did not violate the Fourth Amendment. Officers Hill and Fox had an objective reasonable belief that a burglary or breaking and entering was in process and that a suspect or suspects may still be in defendant's home. Officer Hill testified that the Spencer Police Department had received a burglar alarm report concerning a suspected breaking and entering

at defendant's home. Once he arrived and began his inspection, he noticed that a back window was broken such that a person could have entered defendant's home. Moreover, because all the doors remained locked, Officer Hill reasonably believed that the intruder could have still been in the home. Accordingly, probable cause and exigent circumstances existed which justified the warrantless entry into and subsequent search of defendant's home.

Even though the initial entry into defendant's home was constitutional, we must determine whether the scope of their search inside the home was reasonable. *Woods*, 136 N.C. App. at 393, 524 S.E.2d at 367. In *Woods*, this Court noted that "the ensuing search is reasonable under the circumstances only in so far as it furthers the stated purpose for entering." *Id.* In other words, "the scope of a warrantless search must be strictly circumscribed by the exigencies which justify its initiation." *Id.* (internal quotation marks omitted). Here, the scope of the officers' search was confined to places where an individual could hide, and the issue becomes whether the search of the closet furthers the purpose of the officers' search: their belief that an intruder could still be in defendant's house.

Based on the totality of the circumstances, the search of the hallway closet was justified. Both Officer Hill and Fox testified that Jack indicated that someone may be hiding in the closet. Moreover, Officer Hill testified that the closet was large enough for someone to hide in. Thus, the closet could have contained an intruder, and their search of it clearly furthered their purpose for entering defendant's home without a warrant. Therefore, their discovery of the marijuana in the closet was the result of constitutional conduct.

Defendant argues that since the officers acted unconstitutionally in discovering the marijuana in the dresser, as the trial court concluded, "there is no returning to legal conduct." Based on their unconstitutional conduct of opening the dresser drawer, defendant contends that the fruit of the poisonous tree doctrine would require exclusion of the evidence found in the hallway closet. We disagree.

Our Supreme Court has noted that:

> The "fruit of the poisonous tree doctrine," a specific application of the exclusionary rule, provides that [w]hen evidence is obtained as the result of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the "fruit" of that unlawful conduct should be suppressed. Only evidence discovered as

a result of unconstitutional conduct constitutes fruit of
the poisonous tree.

*State v. McKinney*, 361 N.C. 53, 58, 637 S.E.2d 868, 872 (2006) (internal
citations and quotation marks omitted). Here, the evidence discovered
as a result of that search was not "fruit of the poisonous tree" because
it was found as a result of constitutional conduct. There is no support
for defendant's contention that Officers Hill and Fox could not have
resumed their lawful search after discovering the drugs in the bedroom.
Defendant's argument is without merit.

**[2]** Next, defendant argues that the trial court erred in concluding that
the marijuana in the closet was in plain view since Jack opened the bag
with his nose. Because the trial court failed to resolve the conflict in
the evidence as to whether Jack opened the bag, we remand this matter
back to the trial court.

Our Court has noted that:

> One exception to the warrant requirement is the plain view
> doctrine, under which police may seize contraband or evi-
> dence if (1) the officer was in a place where he had a right
> to be when the evidence was discovered; (2) the evidence
> was discovered inadvertently; and (3) it was immediately
> apparent to the police that the items observed were evi-
> dence of a crime or contraband.

*State v. Graves*, 135 N.C. App. 216, 219, 519 S.E.2d 770, 772 (1999) (citing
*State v. Mickey*, 347 N.C. 508, 495 S.E.2d 669, *cert. denied*, 525 U.S. 853,
142 L. Ed. 2d 106 (1998)).

As discussed, due to exigent circumstances, Officers Hill and Fox
were lawfully present in defendant's house at the time the marijuana in
the hallway was discovered, and they discovered the marijuana inad-
vertently while searching for suspects. However, it is unclear from the
record whether the marijuana in the bag was actually in plain view given
that Jack may have exposed the marijuana that otherwise would have
remained hidden from Officer Hill's and Fox's view.

This is a case of first impression in North Carolina. A few federal
courts have addressed the issue. In *United States v. Reed*, 141 F.3d 644,
650 (6th Cir. 1998), the Sixth Circuit concluded that a dog sniff in the
interior of an apartment that revealed contraband was constitutional
even where the dog may have moved a dresser drawer in conducting its
sniff that exposed the contraband to plain view, noting that other courts
have held that "the instinctive acts of trained canines, such as trying

to open a container containing narcotics, does not violate the Fourth Amendment." Likewise, the Eighth Circuit adopted a similar reasoning in *United States v. Lyons*, 957 F.2d 615, 617 (8th Cir. 1992), holding that a "dog's instinctive actions" such as tearing open a package containing narcotics does not violate the Fourth Amendment.

However, we decline to adopt the reasoning of the Sixth and Eighth circuits. Here, there is a reasonable probability that the trash bag was opened as a result of Jack sniffing it. Had Officer Hill or Fox manipulated or opened the trash bag in such a way that the marijuana, which was initially hidden from view, became exposed, the marijuana would not have been in plain view, and their action would constitute a search which must be justified under the Fourth Amendment. *See Arizona v. Hicks*, 480 U.S. 321, 324-25, 94 L. Ed. 2d 347, 354 (1987) (holding that the police officer's act of moving stereo equipment "did constitute a 'search' separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of his entry into the apartment . . . . [and that] taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry"). Jack was an instrumentality of the police, and his actions, regardless of whether they are instinctive or not, are no different than those undertaken by an officer. If he opened the bags and exposed the otherwise hidden marijuana, it would not be admissible under the plain view doctrine.[3]

In concluding that a canine sniff that exposes hidden contraband would not be admissible under the plain view doctrine, we recognize that there was conflicting testimony presented at the hearing regarding whether the trash bag was partially open at the time the officers opened the closet door. While the trial court acknowledged that "Officer Fox [indicated] that the bag may have been closed until his K-9 stuck his nose in the bag[,]" and noted the conflicting testimony of Officer Fox regarding whether the trash bag was opened by Jack, it did not issue any definitive factual conclusion on this matter. Therefore, we must remand this matter to the trial court to resolve this conflict in the evidence. As discussed above, if the trial court finds that the bag was already partially opened so that the marijuana could be seen by the officers, then the plain view doctrine would apply, and the marijuana in the hallway

---

3. We note that Jack's alert on the bag may have provided the officers probable cause to obtain a search warrant to open the trash bag in the closet. However, here, the officers did not do so prior to Jack allegedly opening the bag and exposing the marijuana.

closet would be admissible. In contrast, if the trial court determines that the bag was opened by Jack in his attempt to sniff the bags' contents, the marijuana would not have been in plain view of the officers, and the marijuana should have been suppressed. Consequently, defendant would be entitled to a new trial.

### Conclusion

Because exigent circumstances existed as to allow Officer Hill and Fox to search defendant's house without a warrant and they resumed their constitutional search after opening the dresser, the fruit of the poisonous tree doctrine does not require exclusion of the marijuana in the hallway closet. However, because there is a conflict in the evidence regarding whether the marijuana in the closet was in plain view, we remand this matter back to the trial court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judges GEER and McCULLOUGH concur.