GEER, Judge.
*464 Defendant Jessica Rasheeda Jordan appeals from a judgment entered on her plea of guilty to misdemeanor child abuse and from a conditional discharge entered on her plea of guilty to possession of a schedule I controlled substance. On appeal, defendant argues that the trial court erred in denying her motion to suppress evidence obtained as a result of a warrantless search of her residence. Defendant contends that the trial court's findings are insufficient to support its conclusion that the officers had an objectively reasonable belief that a breaking and entering was in progress or had recently been committed and that, therefore, the search *465 was justified under the exigent circumstances exception to the warrant requirement. We agree.
The trial court's findings that the officers observed a broken window, that the front door was unlocked, and that no one responded when the officers knocked on the door are insufficient to show that they had an objectively reasonable belief that a breaking and entering had recently taken place or was still in progress, such that there existed an urgent need to enter the property. Accordingly, we hold that the trial court erred in denying the motion to suppress and vacate the judgment.
Facts
At the suppression hearing, the State presented evidence tending to show the following facts. On 15 April 2011 at around 11:40 a.m., Officer Adam Wolf of the Garner Police Department ("GPD") was driving through the Bryan Woods apartment complex in Garner, North Carolina, when he saw a dog roaming around with no owner in sight. When he stopped his patrol car and attempted to catch the dog, he noticed what he testified he believed to be curtains waving through an open window on the first floor of one of the apartment buildings. He approached the window, and from 10 to 15 feet away from the window he observed that the window was broken, there were glass shards on the ground, and a screen was propped up against the side of the apartment building. He believed that a breaking and entering could be in progress and called for back-up.
Shortly thereafter, Officer Doak of the GPD arrived and proceeded to the door of the apartment. Officer Doak told Officer Wolf that the door was unlocked. The officers knocked on the door and announced their presence as police officers. The fact that the door was unlocked increased their suspicions that something was "not right" and that a potential breaking and entering could be in progress. The officers were concerned that a suspect could still be inside the apartment. The officers opened the door slightly, again announced their presence, and waited for approximately one minute. When there was still no response, the officers, who by that time were joined by Detective Moore of the GPD, entered the apartment to do a protective sweep.
The purpose of the sweep was to determine whether someone was hiding in the apartment and whether they had interrupted a crime in progress. The officers completed an initial sweep of the apartment from the front to the back, and then a secondary sweep of the apartment from the back of the apartment to the front. At one point during the sweep, the officers came to a room where the door leading to the room was blocked *466 by a heavy object. The officers pushed the door open and knocked over a dresser that was blocking their entry. Once inside the room, the officers saw narcotics and other drug paraphernalia in plain view. *517 After the officers completed the protective sweep and exited the apartment, defendant pulled up to the apartment with her boyfriend James Chance. Defendant and Mr. Chance told the officers that they lived in the apartment. The officers explained that they believed that a break-in could be in progress or that someone had broken in and asked defendant and Mr. Chance to check and see if anything was missing or out of place. Defendant and Mr. Chance went into their living room and said that everything was fine without checking any other room. Based on the officers' observations of drug paraphernalia and narcotics in the apartment, the officers then proceeded to obtain a search warrant for the apartment.
Detective Moore returned with a search warrant several hours later. Pursuant to the search warrant, the officers found what they believed to be 3, 4-methylenedioxymethamphetamine ("MDMA") inside a vase in the common area of the apartment. They also found marijuana, digital scales, and a marijuana blunt. Defendant and Mr. Chance were arrested following the search.
On 9 August 2011, in case file number 11 CRS 208687, defendant was indicted on charges of trafficking in MDMA by possession, possession with intent to sell and deliver marijuana, and maintaining a dwelling used for keeping and selling a controlled substance. On 29 November 2011, in case file number 11 CRS 208689, defendant was indicted on charges of misdemeanor possession of marijuana, possession of drug paraphernalia and misdemeanor child abuse.
Defendant moved to suppress the evidence obtained as a result of the search of her residence. A hearing on defendant's motion was held on 4 June 2013 before Judge Howard E. Manning, Jr. At the hearing, defendant submitted into evidence a map of the layout of Bryan Woods Apartments. The map showed that directly across the street from defendant's apartment are tennis courts and diagonally across the street from the apartment is a swimming pool, clubhouse, and the apartment complex office. On cross-examination, Officer Wolf admitted that he had not heard any screams or cries for help coming from the apartment and that there were no reports of any burglaries in the area. Officer Wolf also admitted that he did not take any steps to further investigate the broken window or contact the apartment manager prior to entering defendant's apartment.
*467 Bernard Clark, an investigator with the Wake County Public Defender's Office who was previously employed by the New York City Police Department for 29 years, testified for the defense. Mr. Clark testified that he went to the apartment complex and spoke to the property manager, who told him that the window had been broken by defendant's boyfriend after he and defendant had locked themselves out of the apartment. The window had not yet been fixed because the apartment complex wanted Mr. Chance to pay for it. Mr. Clark further testified that in his opinion, defendant's apartment was an odd location for a break-in because it was located in a heavy traffic area and was in plain view of the office, pool, tennis courts, and main road of the complex.
At the close of the hearing, Judge Manning orally rendered his ruling. He rejected the State's contention that exigent circumstances existed based on the possibility that a person within the house could be in need of immediate aid. He stated: "I don't view this situation as falling under the helping somebody in the house, somebody might be hurt, somebody might be beat up. There's nothing here that causes me to think somebody was dead, tied up, stuffed in the closet or anything else."
However, Judge Manning concluded that exigent circumstances existed based upon the officer's reasonable belief that there was a breaking and entering in progress. Judge Manning explained:
In this case, what is important to me, looking at it objectively, is that the officer saw the window open, the screen on the ground, called for backup. The door was open. The door was not locked.
At that point, you got two things that tell me that something's going on-could be going on inside. And then when you ask if anybody is in there and didn't hear *518 anything, I think they had a right to go in and make a sweep.
Accordingly, Judge Manning denied the motion to suppress.
After the suppression hearing, the substance originally thought by the officers to be MDMA was subsequently identified as N-Benzylpiperazine ("BZP") by the laboratory. On 3 December 2013, a superseding indictment was issued in 11 CRS 208687 that charged defendant with possession with intent to sell and deliver BZP, possession with intent to sell or deliver marijuana, and maintaining a dwelling used for keeping or selling controlled substances.
At a hearing held before Judge Carl R. Fox on 25 February 2014, defendant entered a negotiated plea of guilty to one count of felony *468 possession of a schedule I controlled substance in 11 CRS 208687 and one count of misdemeanor child abuse in 11 CRS 208689. The remaining charges were dismissed.
In 11 CRS 208689, the trial court entered judgment on defendant's guilty plea to misdemeanor child abuse, sentenced defendant to 75 days of imprisonment, suspended the sentence, and placed defendant on supervised probation for 12 months. In 11 CRS 208687, the trial court entered a conditional discharge of the possession of a controlled substance offense pursuant to N.C. Gen.Stat. § 90-96(a), deferred further proceedings in the matter, and placed defendant on supervised probation for 12 months. Defendant gave oral notice of appeal. On 18 April 2014, Judge Manning entered a written order denying defendant's motion to suppress.
Discussion
Initially, we note that although the written order denying defendant's motion to suppress was entered after defendant orally appealed the denial of her motion to suppress, the trial court had jurisdiction to enter the written order, and it is properly before this Court. As explained by this Court in State v. Price, --- N.C.App. ----, ----, 757 S.E.2d 309, 312, disc. review denied, 367 N.C. 508, 759 S.E.2d 90 (2014) :
N.C. Gen.Stat. § 15A-1448(a) sets forth the guidelines for time for entry of an appeal and jurisdiction over a case. Under N.C. Gen.Stat. § 15A-1448(a)(3), "[t]he jurisdiction of the trial court with regard to the case is divested ... when notice of appeal has been given and the period described in [N.C.G.S. § 15A1448(a)(1)-(2) [sic]] ... has expired." Subsection (1) of N.C. Gen.Stat. § 15A-1448(a) provides that "[a] case remains open for the taking of an appeal to the appellate division for the period provided in the rules of appellate procedure for giving notice of appeal." Id. § 15A-1448(a)(1).
Rule 4 of the Rules of Appellate Procedure, in turn, provides for two modes of appeal in a criminal case: (1) A party may give oral notice of appeal at the time of trial or of the pretrial hearing, or (2) "notice of appeal may be in writing and 'filed with the clerk of court ... at any time between the date of the rendition of the judgment or order and the fourteenth day after entry of the judgment or order.' " Price, --- N.C.App. at ----, 757 S.E.2d at 312 (quoting State v. Oates, 366 N.C. 264, 268, 732 S.E.2d 571, 574 (2012) ). Consequently, the period for giving notice of *469 appeal expires-and the trial court's jurisdiction over the case divests-14 days after entry of a written order.
With respect to the denial of a motion to suppress, N.C. Gen.Stat. § 15A-979(b) (2013) provides that "[a]n order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." Pursuant to this statute, " 'a defendant bears the burden of notifying the state and the trial court during plea negotiations of the intention to appeal the denial of a motion to suppress, or the right to do so is waived after a plea of guilty.' " State v. Brown, 142 N.C.App. 491, 492, 543 S.E.2d 192, 193 (2001) (quoting State v. McBride, 120 N.C.App. 623, 625, 463 S.E.2d 403, 404 (1995), aff'd per curiam, 344 N.C. 623, 476 S.E.2d 106 (1996) ). In this case, defendant notified the State of her intention to appeal the denial of her suppression motion and then orally appealed the judgment entered upon her plea of guilty.
Although defendant properly appealed the denial of her suppression motion, the trial *519 court retained jurisdiction to enter a written order. Accordingly, we hold that the written suppression order is properly before this Court. See Price, --- N.C.App. at ----, 757 S.E.2d at 315 (holding trial court had jurisdiction to enter written suppression order after the State gave oral notice of appeal from trial court's ruling stated in open court, and reviewing written suppression order). Cf. Oates, 366 N.C. at 268, 732 S.E.2d at 575 (holding timely State's written notice of appeal filed after oral rendition of ruling even though State did not file additional written notice of appeal after entry of written order).
Motion to Suppress
On appeal, defendant argues that the trial court erred in denying her motion to suppress the evidence obtained as a result of the warrantless search of her residence. Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law ... are fully reviewable on appeal." State v. Hughes, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).
Defendant contends that the trial court erred in concluding that the warrantless entry into her apartment was justified by exigent circumstances. "In order to justify a warrantless entry of a residence, there *470 must be probable cause and exigent circumstances which would warrant an exception to the warrant requirement." State v. Wallace, 111 N.C.App. 581, 586, 433 S.E.2d 238, 241 (1993).
With respect to exigent circumstances, this Court has explained:
Exigent circumstances exist when there is "[a] situation that demands unusual or immediate action and that may allow people to circumvent usual procedures [.]" Black's Law Dictionary 236 (7th ed.1999); see also Robert L. Farb, Arrest, Search, and Investigation in North Carolina 49 (2d ed.1992) (stating that exigent circumstances exist when immediate action is necessary). "If the circumstances of a particular case render impracticable a delay to obtain a warrant, a warrantless search on probable cause is permissible...." State v. Allison, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979). The United States Supreme Court has approved the following exigent circumstances justifying warrantless searches and seizures: (1) where law enforcement officers are in "hot pursuit" of a suspect, see, e.g., State [United States ] v. Santana, 427 U.S. 38, 42-43[, 96 S.Ct. 2406, 2409-10], 49 L.Ed.2d 300, 305 (1976) ; (2) where there is immediate and present danger to the public or to law enforcement officers, see, e.g., Warden v. Hayden, 387 U.S. 294, 298-99[, 87 S.Ct. 1642, 1645-46], 18 L.Ed.2d 782, 787 (1967) ; (3) where destruction of evidence is imminent, see, e.g., Santana, 427 U.S. at 43[, 96 S.Ct. at 2410], 49 L.Ed.2d at 305 ; and (4) where the gravity of the offense for which the suspect is arrested is high, see, e.g., Welsh v. Wisconsin, 466 U.S. 740, 753[, 104 S.Ct. 2091, 2099], 80 L.Ed.2d 732, 745 (1984). These cases suggest that exigent circumstances exist where the need for immediate action is so great as to outweigh the potential infringement of a defendant's rights under the Fourth Amendment, thereby justifying the officers' failure to obtain a warrant.
State v. Nance, 149 N.C.App. 734, 743-44, 562 S.E.2d 557, 563-64 (2002).
In State v. Woods, 136 N.C.App. 386, 391, 524 S.E.2d 363, 366 (2000), this Court recognized that "State and federal courts in other jurisdictions generally agree that where an officer reasonably believes that a burglary is in progress or has been recently committed, a warrantless entry of a private residence to ascertain whether the intruder is within or there are people in need of assistance does not offend the Fourth *471 Amendment." In Woods, an officer was dispatched to the defendant's mobile home to investigate an alarm that was going off. Id. at 388, 524 S.E.2d at 364. When the officer arrived, he heard the alarm and observed that the rear door of the mobile home was ajar. Id. He announced his presence, identified himself as *520 a police officer, and requested that anyone inside exit the residence. Id. When he heard no response, he entered the mobile home to search for potential victims or perpetrators. Id. A cursory search of the home revealed that a window had been broken. Id. Under these circumstances, the Court held that the entry into the defendant's home was supported by both probable cause and exigent circumstances, as "[i]t was clear an uninvited entry had been made at the residence and the officers had reason to believe that intruders or victims could still be on the premises." Id. at 392, 524 S.E.2d at 366.
Similarly, in State v. Miller, 228 N.C.App. 496, 499, 746 S.E.2d 421, 425 (2013), rev'd on other grounds, 367 N.C. 702, 766 S.E.2d 289 (2014), this Court held that the officers' warrantless entry into the defendant's home was justified based on the exigent circumstances exception because the officers "had an objective reasonable belief that a burglary or breaking and entering was in process and that a suspect or suspects may still be in defendant's home." In that case, the officer had received a burglar alarm report concerning a suspected breaking and entering at the defendant's home, and when the officer arrived, he noticed a back window was broken. Id. at 499, 746 S.E.2d at 425. This Court noted that "because all the doors remained locked, [the officer] reasonably believed that the intruder could have still been in the home." Id. at 499, 746 S.E.2d at 425.
In this case, the trial court found that "Officer Wolfe [sic] observed a broken window, the window's screen leaning up against the apartment building, glass on the ground directly below the window, an unlocked front door of the apartment and no response from inside the apartment when officers knocked and announced their presence." Defendant does not dispute these findings and, therefore, they are binding on appeal. State v. Ballance, 218 N.C.App. 202, 214, 720 S.E.2d 856, 865 (2012). The dispositive issue, therefore, is whether these findings are sufficient to support a conclusion that the officers had an objectively reasonable belief that a breaking and entering was in progress or had been recently committed.
Defendant argues, and we agree, that the facts of this case are distinguishable from the facts in Woods and Miller. In each of those cases, the officers were specifically dispatched to investigate reports of an alarm sounding at the defendants' residences. The officers' subsequent discovery of a broken window and door left ajar in those cases confirmed what *472 the officers had already suspected-that a burglary had recently taken place. Here, in contrast, there was no alarm, and the officers were not called to the location to investigate a suspected burglary. Rather, Officer Wolf just happened upon the broken window of the apartment while he was on patrol in the middle of the day. Absent an alarm or additional information provided in a dispatch, there is no indication of how or when the window was broken.
In State v. Morgavi, 58 Wash.App. 733, 794 P.2d 1289 (1990), the Washington Court of Appeals drew a similar distinction. In that case, the court held that entry into the defendant's residence was not justified under the exigent circumstances exception where "[t]he facts that led the officers to believe that a burglary was in progress or had recently taken place consisted of the presence of a car in front of the garage, opened and partially broken doors to the garage, an open back door to the house and an open side door to the garage." Id. at 739, 794 P.2d at 1292. The court explained:
These observations, while perhaps enough to raise suspicions, were not enough to support a reasonable belief that a crime had occurred or was occurring on the premises. Indeed, these observations were consistent with any number of innocent explanations. These facts are distinguishable from those in [ State v. ] Campbell [, 15 Wash.App. 98, 547 P.2d 295 (1976) ] and [ State v. ] Bakke [, 44 Wash.App. 830, 723 P.2d 534 (1986) ] in a significant aspect. In each of those cases, the police were summoned to the premises by concerned neighbors who had witnessed the burglaries and the flight of suspects. In both of those cases the police officers were not following their own hunch that a crime had occurred, but rather, were responding to the report of a third party who had actually witnessed the crime.
*521 Id., 794 P.2d at 1292-93. The court acknowledged that when officers are dispatched to a location based upon a report of a crime taking place, "the police clearly ha[ve] a reason to investigate what ha[s] been described as an emergency." Id. at 740, 794 P.2d at 1293. In contrast, where the officers merely had a "hunch" that a crime had occurred, "the emergency was not apparent." Id. at 739, 740, 794 P.2d at 1293.
In this case, even assuming that the broken window gave the officers probable cause to believe that a burglary had been committed, there is no evidence that the burglary had been committed recently or that it was on-going. Indeed, in Miller, the Court recognized that the locked door *473 suggested that the perpetrator was still inside. It stands to reason that the unlocked door in this case suggests that any perpetrator who may have gained entry to defendant's apartment through the broken window had already left through the front door.
Officer Wolf acknowledged at the hearing that he did not know when the window was broken, and there is no evidence suggesting that it had been broken recently. Aside from the broken window, the officers had no reason to believe that there was an urgent need to enter the property. See State v. Simmons, 158 S.W.3d 901, 907 (Mo.Ct.App.2005) (holding that although it may have been reasonable for officer to suspect that a burglary had occurred "at some point," there was nothing to indicate that exigent circumstances existed where officer "neither saw nor heard anyone in or about the building before his entry" and there was no evidence presented "regarding how long the open door and broken window conditions had existed").
The State also argues that exigent circumstances existed based upon the possibility that a victim could have been inside and in need of aid. The trial court, however, orally rejected that contention and did not include that justification in its findings of fact or conclusions of law, and the State does not specifically contend in its brief that the trial court deprived it of an alternative basis to uphold the order. See N.C.R.App. P. 28(c) ("Without taking an appeal, an appellee may present issues on appeal based on any action or omission of the trial court that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken."). In any event, none of the trial court's findings supports a conclusion that it was reasonable for the officers to believe that there was someone inside the apartment in need of immediate assistance. As stated by the Tenth Circuit, "[t]he sanctity of the home is too important to be violated by the mere possibility that someone inside is in need of aid-such a 'possibility' is ever-present." United States v. Martinez, 643 F.3d 1292, 1299-300 (10th Cir.2011).
Morgavi, Simmons, and Martinez are consistent with this Court's recognition that "exigent circumstances exist where the need for immediate action is so great as to outweigh the potential infringement of a defendant's rights under the Fourth Amendment, thereby justifying the officers' failure to obtain a warrant." Nance, 149 N.C.App. at 743-44, 562 S.E.2d at 564. In this case, the only circumstances justifying the officers' entry into defendant's residence were a broken window, an unlocked door, and the lack of response to the officers' knock at the door. We *474 hold that although these findings may be sufficient to give the officers a reasonable belief that an illegal entry had occurred at some point , they are insufficient to give the officers an objectively reasonable belief that a breaking and entering was in progress or had occurred recently.
Additionally, we note that the evidence is undisputed that (1) Officer Wolf discovered the broken window in the middle of the day in broad daylight, (2) defendant's apartment is located in a heavy traffic area of the apartment complex, and (3) the broken window was plainly visible from the tennis courts, pool, club house, and main road of the complex. The time of day, the location of the broken window, and the visibility of the supposed entrance point for any break-in are all circumstances relevant to the question whether it was reasonable for the officers to believe that a break in had recently taken place or was ongoing. However, we need not remand for further findings of fact in light of our holding that the trial court's findings are insufficient to support its conclusion of law *522 that the officers' initial entry into defendant's apartment was justified under the exigent circumstances exception to the warrant requirement.
In sum, we hold that the trial court erred by denying defendant's motion to suppress. "When evidence is obtained as the result of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the 'fruit' of that unlawful conduct should be suppressed." State v. Pope, 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992). Since the police obtained a warrant to search the apartment based upon evidence discovered during the illegal warrantless search, any evidence obtained pursuant to the search warrant is the fruit of the illegal search and should be suppressed. Accordingly, we reverse the suppression order and vacate the judgment entered on defendant's guilty plea.
We note that defendant's brief originally presented a second issue as an alternative basis for relief. In the second issue presented on appeal, defendant argued that the trial court lacked jurisdiction to indict defendant for possession of BZP because on 15 April 2011, the alleged date of offense, BZP was not included in the list of schedule I controlled substances contained in N.C. Gen.Stat. § 90-89 (2013). BZP was not added to the list as a controlled substance until 27 June 2011. See 2011 N.C. Sess. Law 326 § 14. (b). Therefore, defendant argued, defendant's plea agreement should be vacated.
We need not address this issue. On 23 February 2015, while this appeal was pending before this Court, the felony possession of a schedule I controlled substance charge in 11 CRS 208687 was dismissed pursuant to defendant's successful completion of the terms of her conditional *475 discharge. Subsequently, defendant moved to amend her brief to withdraw her challenge to the indictment in 11 CRS 208687 as a basis for relief. We have decided in our discretion to grant defendant's motion.
REVERSED.
Judges ELMORE and INMAN concur.