ZACHARY, Judge.
*498 Defendant Barbara Jean Myers McNeil argues that the superior court erred in denying her Motion to Suppress the evidence of her Driving While Impaired offense because it was obtained as a result of an officer's unlawful extension of the initial traffic stop, in violation of the Fourth Amendment. Because the record is devoid of the initial Driving While Impaired judgment in the district court and the notice of appeal to the superior court, the record fails to establish that the superior court had jurisdiction in the instant case. Nevertheless, we elect to treat Defendant's appeal as a petition for writ of certiorari, and affirm.
Background
On 18 May 2016, Officer Shaun Henry and Officer Lane of the Raleigh Police Department were on duty "in a stationary position in a marked patrol vehicle" running license tags of vehicles that passed. At one point, a vehicle drove past the officers and when they ran the vehicle's tag information through the DCI program, they learned that the registered owner of the vehicle was a male with a *320 suspended license. The officers then stopped the vehicle based on their suspicion that it was being driven without a valid license. Officer Henry stated that he only intended to "[i]dentify the driver of the vehicle to see first if the owner was in the car, if they were driving, who the driver of the vehicle was."
As Officer Henry approached the vehicle, he "immediately" saw that Defendant, a female, was in the driver's seat and that there was a female passenger next to her. When Officer Henry reached the driver's window, Defendant did "not acknowledge [his] presence" or roll the window down, but was instead "fumbling through what appeared to be a wallet or a small clutch." Officer Henry testified that "[i]ndicators of impaired driving are inability to locate information pertinent to a traffic stop, looking through a wallet, passing over her driver's license or using-producing a debit card or credit card in place of a driver's license." Officer *499 Henry "tapped on the window and asked if [Defendant] could roll the window down."
Defendant eventually rolled her window down, but only about two inches. Officer Henry testified that "it's kind of a red flag if a window is rolled down very minimally to the point where either words cannot be exchanged, you can barely hear what anyone is saying, or that someone is attempting to mask an odor coming from the vehicle." Officer Henry testified that he
asked [Defendant] if she could roll [the window] down all the way. She stated she could hear me just fine. I introduced myself[.] I explained to her that the registered owner of the vehicle did have a suspended driver's license. And she admitted that the car was not hers and made reference to it being ... her husband's and [that] she gets pulled over all the time for that same reason.
Officer Henry then asked Defendant "if she had her driver's license on her[,]" to which Defendant replied that she did. However, Officer Henry noticed that Defendant "kept fumbling through the same amount of cards over and over again inside that small wallet, mumbling that she did have a license and it was active."
In addition, Officer Henry "had to get inside th[e] [two inch window] crack in order to hear [Defendant] talking because she was looking down and mumbling down into, I guess, her lap where she was-so I could barely hear what she was saying." In doing so, he "began to observe the odor of alcohol coming from the vehicle" as well as "[a] slight slur to her speech." At that point, Officer Henry testified that his investigation changed "from a Chapter 20, or driving, to an impaired driving investigation based on that odor of alcohol and the slurred speech."
When Officer Henry confronted Defendant about the smell of alcohol, "her passenger interjected stating that she was drinking the alcohol and that was what I smelled." He asked Defendant to roll the window all the way down so that he could hear her. Defendant "muttered something else under her breath" and Officer Henry asked her to step out of the vehicle. Officer Henry instructed Defendant to exit the vehicle in order "to separate her from the odor of alcohol her passenger had admitted to consuming. I wanted to see if having her step out would separate her from that odor that I was detecting." Defendant was then subjected to sobriety tests and subsequently charged with Driving While Impaired. Dash-cam video shows that roughly two minutes and forty-six seconds had passed between the time Officer Henry initially approached the vehicle and the time that he asked Defendant to exit the vehicle.
*500 Defendant filed a Motion to Suppress the evidence of the Driving While Impaired offense on the grounds that Officer Henry had unlawfully extended her roadside detention in violation of the Fourth Amendment. At the hearing, Defendant argued that Officer Henry was required to cease his investigation once he saw that the driver of the vehicle was Defendant-a woman-in that the sole "purpose for the stop [was] to address a male driver with a revoked license." The State countered that Officer Henry developed "reasonable articulable suspicion" to believe that Defendant was intoxicated during the initial stop, and that he was therefore permitted to extend the stop in order to investigate that suspicion.
*321 The trial court orally denied Defendant's Motion to Suppress from the bench without making specific findings on the matter, or entering a written order. Defendant properly renewed her Fourth Amendment objection at the time the evidence was presented at trial, which the trial court again overruled. The jury thereafter found Defendant guilty of Driving While Impaired. Defendant timely appealed.
On appeal, Defendant argues that the trial court erred in denying her Motion to Suppress because "[o]nce the underlying reason for the stop of [Defendant] had been satisfied, the stop should not have been prolonged and became unlawful at that point." Accordingly, Defendant maintains that "all evidence obtained after that point should have been suppressed." We disagree.
Jurisdiction
We initially address whether this Court has jurisdiction over Defendant's appeal from the superior court's judgment of misdemeanor Driving While Impaired.
"The superior court has no jurisdiction to try a defendant on a warrant for a misdemeanor charge unless [she] is first tried, convicted and sentenced in district court and then appeals that judgment for a trial de novo in superior court." State v. Felmet , 302 N.C. 173, 175, 273 S.E.2d 708, 710 (1981) (citing State v. Hall , 240 N.C. 109, 81 S.E.2d 189 (1954) ). In the event that "the record is silent and the appellate court is unable to determine whether the [superior court] had jurisdiction, the appeal should be dismissed." Id. at 176, 273 S.E.2d at 711, 302 N.C. 173 (citing State v. Hunter , 245 N.C. 607, 96 S.E.2d 840 (1957) ; State v. Banks , 241 N.C. 572, 86 S.E.2d 76 (1955) ; and State v. Patterson , 222 N.C. 179, 22 S.E.2d 267 (1942) ).
In the instant case, the district court's Driving While Impaired judgment, if there was one, is not included in the record on appeal. Nor *501 is there any record of notice of appeal from the district court to the superior court. Therefore, the record is silent as to whether Defendant was indeed first convicted in district court and thereafter properly appealed that judgment to superior court. We are thus unable to determine whether the superior court had jurisdiction when it entered judgment against Defendant. See Felmet , 302 N.C. at 176, 273 S.E.2d at 711 ; State v. Phillips , 149 N.C.App. 310, 313-14, 560 S.E.2d 852, 855, appeal dismissed , 355 N.C. 499, 564 S.E.2d 230 (2002).
Nevertheless, this Court has the option "to exercise our discretion to treat [D]efendant's appeal as a petition for certiorari" in order to reach the merits of her arguments. Phillips , 149 N.C.App. at 314, 560 S.E.2d at 855 (citing N.C. Gen. Stat. § 7A-32(c) (additional citations omitted) ). In the instant case, while the district court's judgment and the notice of appeal to the superior court therefrom are not included in the record on appeal, we note that a district court proceeding is in fact alluded to in the record. The district court's order indicates that Defendant was found guilty of Driving While Impaired, but references an unattached "DWI judgment," which is not included in the record. Moreover, the State has not disputed that the superior court had jurisdiction in the instant case. Under these circumstances, we elect to treat Defendant's appeal as a petition for certiorari, and grant the same. See id.
Merits of Defendant's Appeal
I. Standard of Review
Our review of a trial court's order denying a defendant's motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). Whether those facts are sufficient to support the conclusion that an "officer had reasonable suspicion to detain a defendant is reviewable de novo ." State v. Kincaid , 147 N.C.App. 94, 97, 555 S.E.2d 294, 297 (2001) (citing State v. Munoz , 141 N.C.App. 675, 682, 541 S.E.2d 218, 222, cert. denied , 353 N.C. 454, 548 S.E.2d 534 (2001) ). However, where the trial court has not made findings of fact, "[i]f *322 there is no conflict in the evidence on a fact, failure to find that fact is not error." State v. Smith , 135 N.C.App. 377, 380, 520 S.E.2d 310, 312 (1999). "A finding may be implied by the trial court's denial of [a] defendant's motion to suppress where the evidence is uncontradicted." Id. (citing State v. Cobb , 295 N.C. 1, 18-19, 243 S.E.2d 759, 769 (1978) ). *502 II. Discussion
The Fourth Amendment to the United States Constitution requires that an officer's "investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " State v. Watkins , 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting Brown v. Texas , 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357, 362 (1979) ). The reasonable suspicion standard requires that "an officer simply must 'reasonably conclude in light of his experience that criminal activity may be afoot.' The officer 'must be able to point to specific and articulable facts,' and to 'rational inferences from those facts,' that justify the ... seizure." State v. Bullock , 370 N.C. 256, 805 S.E.2d 671, 674 (2017) (quoting Terry v. Ohio , 392 U.S. 1, 30, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889, 911, 906 (1968) ) (ellipses omitted). We have held that "when a police officer becomes aware that a vehicle being operated is registered to an owner with a suspended or revoked driver's license, and there is no evidence appearing to the officer that the owner is not the individual driving the automobile, reasonable suspicion exists to warrant an investigatory stop." State v. Hess , 185 N.C.App. 530, 534, 648 S.E.2d 913, 917 (2007).
That a traffic stop is justified at its inception, however, does not afford the officer an unrestrained encounter with the individual. It is well established that "the duration of a traffic stop must be limited to the length of time that is reasonably necessary to accomplish the mission of the stop[.]" Bullock , 370 N.C. 256, 805 S.E.2d at 673 (citing Rodriguez v. United States , 575 U.S. ----, ----, 135 S.Ct. 1609, 191 L.Ed.2d 492, 499 (2015) ). "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose." Rodriguez , 575 U.S. at ----, 135 S.Ct. 1609, 191 L.Ed.2d at 498 (citations, quotation marks, and alteration omitted). "Authority for [a] seizure thus ends when tasks tied to the traffic infraction are-or reasonably should have been-completed." Id. at ----, 135 S.Ct. 1609, 191 L.Ed.2d at 498 (citation omitted).
Nevertheless, it is entirely permissible for an officer to "conduct certain unrelated checks during an otherwise lawful traffic stop" so long as the "unrelated investigations" do not prolong "the time reasonably required to complete the mission" of the stop. Id . at ----, 135 S.Ct. 1609, 191 L.Ed.2d at 499 (brackets omitted). Otherwise, the only event in which an officer will be permitted to prolong his detention of an individual is where "reasonable suspicion of another crime arose before that mission was completed[.]" Bullock , 370 N.C. 256, 805 S.E.2d at 673 (citing Rodriguez , 575 U.S. at ----, 135 S.Ct. 1609, 191 L.Ed.2d at 499 ).
In the instant case, Defendant argues that "[w]hile the officers might have had reasonable suspicion when they stopped the vehicle *503 [D]efendant was driving, the traffic stop became unlawful when it was verified that the male owner was not driving the vehicle." We disagree.
We first note that Defendant's argument is based upon a basic erroneous assumption: that a police officer can discern the gender of a driver from a distance based simply upon outward appearance. Not all men wear stereotypical "male" hairstyles nor do they all wear "male" clothing. The driver's license includes a physical description of the driver, including "sex." Until Officer Henry had seen Defendant's driver's license, he had not confirmed that the person driving the car was female and not its owner. While he was waiting for her to find her license, he noticed her difficulty with her wallet, the odor of alcohol, and her slurred speech.
In any event, the time needed to complete an officer's mission will always include time for the " 'ordinary inquiries incident to the traffic stop.' " Id. at 257, 805 S.E.2d at 673 (quoting Rodriguez , 575 U.S. at ----, 135 S.Ct. 1609, 191 L.Ed.2d at 499 *323 (brackets, citation, and internal quotation marks omitted) ). Such ordinary "inquiries include 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.' " Id. at 257, 805 S.E.2d at 673 (quoting Rodriguez , 575 U.S. at ----, 135 S.Ct. 1609, 191 L.Ed.2d at 499 ). Regardless of an officer's precise reason for initially stopping a vehicle, "database searches of driver's licenses, warrants, vehicle registrations, and proof of insurance all fall within the mission of a traffic stop." State v. Campola , --- N.C.App. ----, ----, 812 S.E.2d 681, 688 (2018) (citation omitted).
Defendant cites no authority for her proposition that Officer Henry's "mission" in the instant case must have been limited solely to verifying "that the male owner was not driving the vehicle." Rather, Officer Henry's "mission" upon stopping Defendant's vehicle appropriately encompassed the two minutes and forty-six seconds' worth of "ordinary inquiries" incident to any traffic stop, including conversing with Defendant in order to inform her of the basis for the stop, asking Defendant for her driver's license, and checking that the vehicle's registration and insurance had not expired. Rodriguez , 575 U.S. at ----, 135 S.Ct. 1609, 191 L.Ed.2d at 499 ; cf. State v. Jackson , 199 N.C.App. 236, 243, 681 S.E.2d 492, 497 (2009) ("[A]n initial traffic stop concludes and the encounter becomes consensual only after an officer returns the detainee's driver's license and registration."). Thus, Officer Henry was not, as Defendant suggests, required to return to his vehicle at the moment he saw that a female, rather than a male, was driving the vehicle, nor upon approaching Defendant and learning that her husband was the owner of the car whose license was suspended.
*504 The routine information that Officer Henry sought to obtain from Defendant "was simply time spent pursuing the mission of the stop." Bullock , 370 N.C. 256, 805 S.E.2d at 676. During the course of that mission, Defendant avoided rolling her window all the way down, and Officer Henry also noticed that Defendant "kept fumbling through the same amount of cards over and over again" in an attempt to find her license. Meanwhile, Officer Henry could barely hear what Defendant was saying because she was "mumbling" and had "[a] slight slur to her speech." This prompted Officer Henry to lean in very closely to the window, at which point he smelled "the odor of alcohol coming from the vehicle." Despite Defendant's passenger providing an excuse for the smell, such circumstances, along with his training and experience, provided Officer Henry with reasonable suspicion to believe that Defendant was intoxicated, warranting further investigation. See , e.g. , Farrell v. Thomas , 247 N.C.App. 64, 68, 784 S.E.2d 657, 660, appeal dismissed , 369 N.C. 36, 794 S.E.2d 318 (2016) ("[Defendant's] glassy, bloodshot eyes and slurred speech alone created a strong suspicion that [defendant] might be impaired."); State v. Veal , 234 N.C.App. 570, 579, 760 S.E.2d 43, 49 (2014) ("Officer Cloer's observations during the ... encounter (the odor of alcohol and an unopened container) established reasonable suspicion to further detain and investigate the defendant.").
Because Officer Henry developed reasonable suspicion of a new offense while he was in the process of completing his original mission in stopping Defendant's vehicle, the Fourth Amendment clock was in essence "re-set" so as to permit him to extend the detention in order to inquire about that new violation. See Campola , --- N.C.App. at ----, 812 S.E.2d at 691. Accordingly, the trial court properly denied Defendant's Motion to Suppress.
Conclusion
We elect to treat Defendant's appeal as a petition for writ of certiorari. Officer Henry lawfully stopped Defendant's vehicle based on his reasonable suspicion that the vehicle was being operated by a driver without a valid license. Before Officer Henry completed the mission of the stop, he acquired reasonable suspicion that Defendant was operating the vehicle while impaired. Officer Henry was therefore permitted to extend his stop of Defendant in order to investigate the potential driving while impaired offense. The trial court did not err when it denied Defendant's Motion to Suppress the evidence obtained from that subsequent *324 lawful detention. Accordingly, the trial court's denial of Defendant's Motion to Suppress is *505 AFFIRMED.
Judge STROUD concurs.
Judge MURPHY dissents by separate opinion.