IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-291

Filed 18 February 2026

Alamance County, No. 21CR055064-000

STATE OF NORTH CAROLINA

v.

SHANTINA NICOLE ALSTON

Appeal by defendant from judgment entered 31 January 2024 by Judge Andrew Hanford in Alamance County Superior Court. Heard in the Court of Appeals 13 January 2026.

*Attorney General Jeff Jackson, by Assistant Attorney General Liliana R. Lopez, for the State.*

*Cooper Strickland for defendant-appellant.*

ZACHARY, Judge.

Defendant Shantina Nicole Alston appeals from the trial court's judgment entered upon her *Alford* plea to driving while impaired.[1] On appeal, Defendant argues that the trial court erred by denying her pretrial motion to suppress and motion in limine. After careful review, we conclude that the trial court did not err by

---

[1] "A defendant enters into an *Alford* plea when he proclaims he is innocent, but intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *State v. Crawford*, 278 N.C. App. 104, 105 n.1, 861 S.E.2d 18, 21 n.1 (2021) (cleaned up), *disc. review denied*, 382 N.C. 728, 879 S.E.2d 582 (2022); *see also North Carolina v. Alford*, 400 U.S. 25, 37, 27 L. Ed. 2d 162, 171 (1970).

denying Defendant's motion to suppress and that this Court lacks jurisdiction to review the court's order denying Defendant's motion in limine.

## I. Background

In Alamance County District Court, Defendant was found guilty of driving while impaired. On 2 March 2023, Defendant appealed this judgment to Alamance County Superior Court.

On 24 January 2024, Defendant filed a motion in limine to exclude a toxicology report of her blood and any related documentation as well as the testimony of certain expert witnesses. On 29 January 2024, Defendant filed a motion to suppress "all evidence against her beyond arrest in this matter and dismiss the charges against her." These motions came on for hearing on 30 January 2024 in Alamance County Superior Court.

At the hearing, Officer Jack Snow of the Burlington Police Department testified to the following: On 9 October 2021, he responded to a call regarding "a physical altercation possibly involving some firearms" at the Pho Bar. Officer Snow arrived at the Pho Bar, parked, and began walking toward the front of the establishment. As he was walking, a car driven by Defendant "came from [Officer Snow's] left side [at] approximately 10 to 15 miles per hour[,] driving straight at [him]." The car's trajectory "caused [him] to have to move to the left to avoid being hit by the vehicle."

Defendant stopped and Officer Snow asked her to exit the vehicle. Officer Snow

testified that "she had slurred speech" and her "eyes were glossy, yellow[,] and hazed over." He noted that "[t]here was immediately a strong odor of alcoholic beverage coming from [Defendant]'s breath and from the vehicle." Defendant admitted that she had been at the Pho Bar and, when Officer Snow asked how many drinks she had consumed, Defendant responded: "Not much at all." Defendant submitted to a portable breathalyzer test but "refused or did not wish to complete any" field sobriety tests and Officer Snow placed Defendant under arrest.[2] Footage of the encounter from Officer Snow's bodycam was admitted into evidence as State's Exhibit No. 1 and played for the court. The court then heard the arguments of counsel and orally denied Defendant's motion to suppress.

At the hearing, the trial court also addressed Defendant's motion in limine. The court heard the arguments of counsel and orally denied the motion.

The trial court accepted Defendant's *Alford* plea on 31 January 2024; pursuant to the plea arrangement, Defendant agreed to plead guilty to driving while impaired and reserved the right to appeal the denial of her pretrial motion to suppress "all evidence against her beyond arrest" and the denial of her motion in limine to exclude the toxicology report, any related documentation, and certain expert witness testimony. That same day, the court entered judgment sentencing Defendant to 60 days' imprisonment in the custody of the North Carolina Department of Adult

---

[2] Defendant submitted to field sobriety tests after being placed under arrest.

Correction and suspending her sentence for 18 months of supervised probation.

Defendant gave oral notice of appeal. The trial court entered written orders on 1 February 2024, recording its findings of fact and conclusions of law pursuant to its oral denial of Defendant's pretrial motion to suppress and motion in limine.

## II. Discussion

Defendant argues that the trial court erred by denying her pretrial motion to suppress and motion in limine.

### A. Motion to Suppress

First, Defendant asserts that "[t]he trial court erred by denying [her] motion to dismiss for lack of probable cause based on the unsupported observations of Officer Snow."[3] We disagree.

### 1. Appellate Jurisdiction

We initially address whether this Court has jurisdiction over Defendant's appeal from the superior court's judgment. "The superior court has no jurisdiction to try a defendant on a warrant for a misdemeanor charge unless she is first tried, convicted and sentenced in district court and then appeals that judgment for a trial de novo in superior court." *State v. McNeil*, 262 N.C. App. 497, 500, 822 S.E.2d 317, 321 (2018) (cleaned up), *disc. review denied*, 372 N.C. 718, 831 S.E.2d 91 (2019), *cert.*

---

[3] We note that Defendant initially identifies this pretrial motion as a motion to *dismiss*. However, given our review of the record and the remainder of Defendant's appellate argument on this issue, we conclude that the motion is most properly characterized as a motion to *suppress*.

*denied*, 590 U.S. 907, 206 L. Ed. 2d 827 (2020). Here, Defendant was tried, convicted, and sentenced in Alamance Court District Court and she timely appealed from district court to superior court. After her conviction in superior court, Defendant timely appealed to this Court.

Next, "we note that although the written [superior court] order denying [D]efendant's motion to suppress was entered after [D]efendant orally appealed the denial of her motion to suppress, the trial court had jurisdiction to enter the written order, and it is properly before this Court." *State v. Jordan*, 242 N.C. App. 464, 468, 776 S.E.2d 515, 518, *disc. review denied*, 368 N.C. 358, 778 S.E.2d 85 (2015). Additionally, Defendant was not required to file an amended notice of appeal after entry of the trial court's written order. *See id.* at 469, 776 S.E.2d at 518–19 (concluding that this Court had jurisdiction where the defendant gave notice of appeal after the trial court rendered its oral ruling but before the court entered its written judgment); N.C.R. App. P. 4(a)(1), (2).

Moreover, a defendant who has pleaded guilty must properly preserve her right to appeal an order denying a motion to suppress. "In North Carolina, a defendant's right to appeal in a criminal proceeding is purely a creation of state statute." *State v. Hannah*, ___ N.C. App. ___, ___, 917 S.E.2d 904, 909 (citation omitted), *disc. review denied*, ___ N.C. ___, 923 S.E.2d 236 (2025). "Generally, a defendant who pleads guilty does not have a statutory right of appeal. However, the General Assembly has, by statute, allowed a defendant to appeal an adverse ruling

in a pretrial suppression hearing despite the defendant's conviction based upon a guilty plea." *State v. Moua*, 289 N.C. App. 678, 683, 891 S.E.2d 14, 19 (2023) (citation omitted), *disc. review denied*, 386 N.C. 280, 900 S.E.2d 671 (2024); *see* N.C. Gen. Stat. § 15A-979(b) (2023) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty.").

"This statutory right to appeal is conditional and not absolute." *Moua*, 289 N.C. App. at 683–84, 891 S.E.2d at 19. As our Supreme Court has determined, "when a defendant intends to appeal from a denial of a motion to suppress pursuant to N.C. Gen. Stat. § 15A-979(b)," the defendant "must give notice of [his or her] intent to the prosecutor and the court *before plea negotiations are finalized*, or [the defendant] will waive the appeal of right provisions of the statute." *Id.* at 684, 891 S.E.2d at 19 (citing *State v. Reynolds*, 298 N.C. 380, 397, 259 S.E.2d 843, 853 (1979), *cert. denied*, 446 U.S. 941, 64 L. Ed. 2d 795 (1980)).

In the instant case, Defendant properly gave notice of her intent to appeal both the judgment entered upon her conviction and the denial of her motion to suppress, as evidenced by the transcript of the hearing below. Accordingly, this issue was properly preserved for appellate review, and we will address its merits. *See State v. Stephens*, ___ N.C. App. ___, ___, 920 S.E.2d 238, 242 (2025) (concluding that the defendant preserved appellate review of the denial of his motion to suppress where he "gave notice of his intention [to appeal] to the prosecutor and to the court before

plea negotiations were finalized, demonstrated by [the d]efendant's preservation of his right to appeal in the transcript of the plea" (cleaned up)).

## 2. Standard of Review

"In reviewing a trial court's determination on a motion to suppress, the trial court's findings of fact are conclusive on appeal if supported by competent evidence." *State v. Springs*, 292 N.C. App. 207, 214, 897 S.E.2d 30, 36 (2024) (cleaned up). "A trial court's conclusions of law . . . are reviewed de novo and are subject to a full review, under which this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Id.* (cleaned up).

## 3. Analysis

"Motions to suppress necessarily present preliminary questions concerning the admissibility of evidence: whether there is both a factual and legal basis to exclude the evidence at issue." *State v. Ezzell*, 277 N.C. App. 276, 282, 858 S.E.2d 375, 379–80 (2021), *appeal dismissed*, 381 N.C. 277, 871 S.E.2d 528 (2022).

> A person commits the offense of impaired driving if he [or she] drives any vehicle upon any highway, any street, or any public vehicular area within this State:
>
> (1) While under the influence of an impairing substance; or
>
> (2) After having consumed sufficient alcohol that he [or she] has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration.

N.C. Gen. Stat. § 20-138.1(a)(1), (2).

Our Supreme Court has explained the meaning of the phrase "under the influence":

> A person is under the influence of intoxicating liquor or narcotic drugs, within the meaning and intent of the statute, when he [or she] has drunk a sufficient quantity of intoxicating beverages or taken a sufficient amount of narcotic drugs to cause him [or her] to lose the normal control of his [or her] bodily or mental faculties, or both, to such an extent that there is an appreciable impairment of either or both of those faculties.

*State v. Parisi*, 372 N.C. 639, 649–50, 831 S.E.2d 236, 243–44 (2019) (cleaned up).

"A person is appreciably impaired when [his or her] impairment can be recognized and estimated." *State v. Venable*, ___ N.C. App. ___, ___, 919 S.E.2d 343, 348 (2025) (cleaned up).

"Before arresting a person, an officer must have probable cause to suspect him [or her] of a crime at the time of the arrest." *State v. Woolard*, 385 N.C. 560, 570, 894 S.E.2d 717, 725 (2023) (cleaned up). "According to well-established federal and state law, probable cause is defined as those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Parisi*, 372 N.C. at 650, 831 S.E.2d at 244 (cleaned up); *see also Woolard*, 385 N.C. at 571, 894 S.E.2d at 726 ("[T]he key question is whether a reasonable officer would find a supported, good faith, and objectively rational basis to suspect a person of a crime." (cleaned up)). "An officer has probable cause to arrest

for impaired driving when, under the totality of the circumstances, he reasonably believes that a motorist consumed alcoholic beverages and drove in a faulty manner or provided other indicia of impairment." *Woolard*, 385 N.C. at 571, 894 S.E.2d at 726 (cleaned up).

In the case at bar, Defendant challenges certain findings made by the trial court in its written order denying her pretrial motion to suppress: (1) "[D]efendant exhibited bad driving in that she almost hit [Officer Snow] with the vehicle in the parking lot"; (2) "the strong odor of alcohol coming from . . . [D]efendant"; (3) "[D]efendant us[ed] the car door for balance"; (4) "[D]efendant's slurred speech"; (5) "[D]efendant's red, glassy eyes"; (6) "[D]efendant's admission to drinking prior to driving on the date in question"; and (7) "[D]efendant's refusal to perform field sobriety testing." She asserts that these "subjective observations" did not provide Officer Snow with probable cause to arrest her for driving while impaired.

"Appellate courts accord great deference to the trial court when reviewing findings of fact because the trial court is entrusted with the duty to hear testimony, weigh the evidence, and resolve any conflicts in the evidence." *State v. Hagaman*, 292 N.C. App. 194, 198, 897 S.E.2d 163, 166 (2024) (cleaned up), *disc. review denied*, 387 N.C. 607, 915 S.E.2d 178 (2025). Thus, even where "there is evidence in the record to support a contrary finding," the trial court's findings are binding on appeal if supported by any competent evidence. *State v. Phillips*, 151 N.C. App. 185, 190, 565 S.E.2d 697, 701 (2002).

a. "[D]efendant exhibited bad driving in that she almost hit [Officer Snow] with the vehicle in the parking lot."

First, Defendant argues that the court's finding that she "exhibited bad driving in that she almost hit [Officer Snow] with the vehicle in the parking lot" was "not supported by the record because his testimony directly contradicts his bodycam footage in material respects." Officer Snow testified that as he was walking toward the Pho Bar, Defendant's vehicle "came from [his] left side [at] approximately 10 to 15 miles per hour[,] driving straight at [him], which caused [him] to have to move to the left to avoid being hit by the vehicle." However, Defendant merely describes that event as it played out on the bodycam footage and does not explain how the court's finding differed from the footage. Our review of the bodycam footage aligns with Officer Snow's testimony. Accordingly, we conclude that both Officer Snow's testimony and the bodycam footage support the trial court's finding that "[D]efendant exhibited bad driving in that she almost hit [Officer Snow] with the vehicle in the parking lot."

b. "[D]efendant us[ed] the car door for balance."

Next, Defendant asserts that Officer Snow's bodycam footage did not support the finding that she "us[ed] the car door for balance." Officer Snow testified that Defendant had "to continually hold on to the door handle to stand straight." The bodycam footage shows Defendant holding the vehicle handle and touching various places on the car door after she exited the car and started speaking with Officer Snow.

As they spoke, Defendant repeatedly adjusted her footing. This footage, coupled with Officer Snow's testimony, supports the trial court's finding that "[D]efendant us[ed] the car door for balance."

    c. "[D]efendant's slurred speech."

Defendant contends that the bodycam footage does not support a finding that she "had slurred speech, particularly without any evidence of how she normally speaks." Officer Snow testified that when he interacted with Defendant, "she had slurred speech" and "[w]as very mush mouth." During cross and redirect examinations, he repeatedly confirmed that Defendant exhibited "slurred speech" throughout their interaction. Officer Snow's testimony supports the finding that Defendant had "slurred speech."

    d. "[T]he strong odor of alcohol coming from . . . [D]efendant" and "[D]efendant's red, glassy eyes."

Defendant does not specifically challenge the evidence supporting the court's findings of "the strong odor of alcohol coming from . . . [D]efendant" and "[D]efendant's red, glassy eyes" but asserts that "these findings alone do not support probable cause under these circumstances."

Officer Snow testified that Defendant's "eyes were glossy, yellow[,] and hazed over" and "[t]here was immediately a strong odor of alcoholic beverage coming from [Defendant]'s breath." Both of these observations contributed to Officer Snow's opinion that Defendant was appreciably impaired. On cross-examination, Officer

Snow confirmed that Defendant's eyes were "bloodshot and glassy, red." The trial court's findings concerning a strong odor of alcohol coming from Defendant and the condition of her eyes are therefore supported by competent evidence. Moreover, contrary to Defendant's argument on appeal, these findings do not constitute the sole support for the trial court's determination of probable cause; the court's conclusion of law is buttressed by multiple other findings addressed herein.

e. <u>"[D]efendant's admission to drinking prior to driving on the date in question."</u>

Officer Snow testified that when he spoke to Defendant, "[s]he advised that she had had several drinks at [the Pho Bar] that night." Defendant argues that she "did not make this admission" but instead, as shown by Officer Snow's bodycam footage, "she only stated 'not much at all' " when he asked her if she had been drinking. On cross-examination, Officer Snow conceded his misstatement. Regardless, the trial court found that Defendant admitted "to drinking prior to driving on the date in question." Accordingly, both Officer Snow's testimony and the bodycam footage support this finding, which notably *does not address how much alcohol Defendant had consumed.* Defendant's challenge to this finding, therefore, lacks merit.

f. <u>"[D]efendant's refusal to perform field sobriety testing."</u>

Next, Defendant argues that the trial court erred by finding as a factor her "refusal to perform field sobriety testing." Bodycam footage shows Officer Snow asking Defendant, "Would you be willing to do any tests for me?" to which Defendant

immediately responded, "No, like seriously - - like, why would I?" The footage then shows Officer Snow placing Defendant under arrest. After Defendant was placed under arrest, she consented to the tests. During the hearing, Officer Snow stated that "prior to advising [Defendant] that she was under arrest I did ask her to complete standardized field sobriety tests and at that time she refused or did not wish to complete any of the tests." This finding was supported both by Officer Snow's testimony and the bodycam footage.

In sum, competent evidence supports each of the challenged findings of fact. The trial court's findings are thus binding on appeal. *Springs*, 292 N.C. App. at 214, 897 S.E.2d at 36.

Moreover, probable cause to arrest for impaired driving is determined by the totality of the circumstances. *See Woolard*, 385 N.C. at 575, 894 S.E.2d at 728–29 (cleaned up) (concluding that a State Highway Patrol Officer had probable cause to arrest a defendant for impaired driving due to the defendant's "erratic weaving; the smell of alcohol on his breath and in his truck; his red, glassy eyes; his admission to drinking; and his performance on the HGN test"). Here, under the totality of the circumstances, Officer Snow had probable cause to arrest Defendant for impaired driving. Thus, the trial court properly denied Defendant's pretrial motion to suppress. Defendant's challenge is overruled.

## B. Motion in Limine

Next, Defendant contends that "[t]he trial court erred by denying [her] motion

in limine to exclude her toxicology report and expert testimony." However, we lack jurisdiction to review this issue.

## 1. Appellate Jurisdiction

As stated above, "[i]n North Carolina, a defendant's right to appeal in a criminal proceeding is purely a creation of state statute," *Hannah*, ___ N.C. App. at ___, 917 S.E.2d at 909 (citation omitted), and a defendant who pleads guilty has no statutory right of appeal, subject to limited exception, *see Moua*, 289 N.C. App. at 683, 891 S.E.2d at 19.

A "defendant who pleads guilty has a right of appeal limited to the following":

1. Whether the sentence "is supported by the evidence." This issue is appealable only if his minimum term of imprisonment does not fall within the presumptive range . . . ;

2. Whether the sentence "results from an incorrect finding of the defendant's prior record level under [N.C. Gen. Stat. §] 15A-1340.14 or the defendant's prior conviction level under [N.C. Gen. Stat. §] 15A-1340.21[ ]" . . . ;

3. Whether the sentence "contains a type of sentence disposition that is not authorized by [N.C. Gen. Stat. §] 15A-1340.17 or [N.C. Gen. Stat. §] 15A-1340.23 for the defendant's class of offense and prior record or conviction level[ ]" . . . ;

4. Whether the sentence "contains a term of imprisonment that is for a duration not authorized by [N.C. Gen. Stat. §] 15A-1340.17 or [N.C. Gen. Stat. §] 15A-1340.23 for the defendant's class of offense and prior record or conviction level[ ]" . . . ;

5. Whether the trial court improperly denied [the]

defendant's motion to suppress . . . ;

6. Whether the trial court improperly denied [the] defendant's motion to withdraw his guilty plea.

*State v. Tinney*, 229 N.C. App. 616, 619–20, 748 S.E.2d 730, 733 (2013) (cleaned up) (citing N.C. Gen. Stat. §§ 15A-979, 15A-1444). The improper denial of a motion in limine is not one of the enumerated instances for which a defendant who has pleaded guilty has the right of appeal.

In the present case, Defendant seeks appellate review of the court's order denying her motion in limine—review to which she is not statutorily entitled. Nonetheless, in such a circumstance, a defendant "may petition the appellate division for review by writ of certiorari." N.C. Gen. Stat. § 15A-1444(e). Here, however, Defendant has not filed a petition for writ of certiorari. Accordingly, we lack jurisdiction to review this issue, and we must dismiss this portion of Defendant's appeal.

## III.    Conclusion

For the foregoing reasons, we conclude that 1) the trial court did not err by denying Defendant's pretrial motion to suppress, and 2) we lack jurisdiction to review the court's order denying Defendant's motion in limine.

NO ERROR IN PART; DISMISSED IN PART.

Judges COLLINS and CARPENTER concur.